623 So.2d 227 (1993)
Billie Gene POLAND, et vir., Plaintiffs-Appellants,
v.
John L. GLENN, et al., Defendants-Appellees.
No. 24959-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1993.
*228 Stephen R. Burke, Minden, for plaintiffs-appellants Billie Gene Poland and Henry Ray Poland.
Michael E. Daniel, Bossier City, for defendant-appellee City of Bossier City.
Mayer, Smith & Roberts by George T. Allen, Jr., Shreveport, for defendant-appellee L.J. Earnest, Inc.
Richard P. Ieyoub, Atty. Gen. by Moses Junior Williams, Tallulah, for defendant-appellee State of LA, Dept. of Transp. Div.
Before MARVIN, SEXTON and STEWART, JJ.
SEXTON, Judge.
The plaintiffs, Billie Gene and Henry Ray Poland, appeal the trial court judgment granting defendants' motions for involuntary dismissal following the presentation of plaintiffs' evidence at trial. The plaintiffs had sought to have defendants, L.J. Earnest, Inc., the State of Louisiana through the Department of Transportation and Development, the City of Bossier City, and Bossier City Police Officers Larry Stockton and Tommy Scott, found liable for damages plaintiffs sustained in an automobile accident. We affirm.
On June 6, 1987, in the early afternoon of a sunny, clear day, Kevin Poland drove his parents' (the plaintiffs) automobile from Bienville Parish westbound on Interstate 20. Kevin Poland was taking his sister, Candace Poland Brown, to the Shreveport Regional Airport. Plaintiff, Billie Gene Poland, was a passenger in the front seat.
After entering Bossier Parish, the Poland vehicle entered a construction zone marked by 45 miles per hour speed limit and "under construction" signs. Large, orange-striped barrels funneled westbound traffic into a single lane. The construction zone continued for several miles.
Near the approximate end of the construction zone, past the Hamilton Road exit and before the access ramp for traffic entering the interstate from Hamilton Road, the driver in front of the Poland vehicle came to an abrupt stop. The testimony indicates that this occurred at a point where both the orange-striped barrels ended and Hamilton Road traffic merged onto the interstate. There is, however, no evidence that any traffic was merging onto the interstate at this time which might have caused the lead vehicle to stop. Kevin Poland attempted to stop his vehicle, but was unable to do so without his vehicle touching or bumping the preceding *229 vehicle. No damage resulted from this initial accident.
The lead vehicle then pulled forward and to the left, closer to the median, but still blocking the only westbound lane of traffic. Less than a minute after the initial collision, the Poland vehicle was struck from behind by a third vehicle, owned and driven by John L. Glenn. This second collision resulted in significant damage to the Poland vehicle and, apparently, personal injuries to Mrs. Poland.
The Bossier City Police Department was notified of the accident and Officers Tommy Scott and Larry Stockton responded. Officer Scott handled the investigation of the accident, and Officer Stockton primarily directed traffic through the accident scene. The driver of the lead vehicle was released without any personal information being collected for inclusion on the accident report. Officer Scott testified that Kevin Poland had talked to the driver of the lead vehicle and, as there had been no damage caused by the initial accident, it was decided that an accident report on the first collision was unnecessary. The accident report does not contain the lead driver's name or other pertinent information on her vehicle. Kevin Poland denied ever talking with the driver of the lead vehicle and claimed that the police officers prevented his approaching the lead driver.
Plaintiffs filed this lawsuit against Mr. Glenn and his insurer; the unknown driver of the lead vehicle, denominated Jane Doe, and her unknown insurer;[*] Kevin Poland and his insurer; the insurer of the Polands' vehicle; Bossier City and its two employees, Officers Scott and Stockton; and two subcontractors, L.J. Earnest, Inc. and Netherton Company, Inc. An amended petition added the general contractor, Holes, Inc. and the State of Louisiana through the Department of Transportation and Development.
Plaintiffs settled with Kevin Poland and John Glenn and their respective insurers. Netherton Company, Inc. and Holes, Inc. were dismissed following unopposed motions for summary judgment after L.J. Earnest, Inc. admitted that it was under contract to perform construction at the point where the accident occurred and was solely responsible for erecting and maintaining all signs, barricades, barrels, and other construction signs and warnings on the project.
The case proceeded to trial against the remaining defendants. Plaintiffs sought to prove liability on the part of L.J. Earnest, Inc. and the state in failing to adequately erect signs or otherwise provide direction to drivers through the construction zone, particularly at the termination of the construction zone. The alleged liability of Bossier City and Officers Scott and Stockton stemmed from the release of the unknown driver of the lead vehicle without obtaining any information from her. Plaintiffs claim they were thus unable to properly seek damages against Jane Doe, a party, in part, responsible for plaintiffs' damages.
At trial plaintiffs testified and called Kevin Poland, Candace Poland Brown, and Officers Scott and Stockton as witnesses. Jane Doe obviously did not testify, nor did Mr. Glenn, who allegedly could not be found at the time of trial. At the close of plaintiffs' evidence, the defendants moved for involuntary dismissal pursuant to LSA-C.C.P. Art. 1672 B. The trial court granted the motion for involuntary dismissal, finding no liability on the part of any of the defendants. The trial court noted that everybody who testified knew the area was under construction, thus precluding liability on the state or L.J. Earnest, Inc., as further signs would not have prevented this accident. Further, the trial court found no liability on the unknown driver of the lead vehicle, thus precluding a finding of liability on the city or its police officers. A judgment was signed dismissing plaintiffs' claims. Plaintiffs appeal.
LSA-C.C.P. Art. 1672 B provides:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may *230 move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In considering a motion for involuntary dismissal, LSA-C.C.P. Art. 1672 B requires the trial court to evaluate all of the evidence and render a decision based upon a preponderance of the evidence without any special inference in favor of the opponent to the motion. Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2d Cir.1988); Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir. 1991). An appellate court should not reverse an involuntary dismissal based on LSA-C.C.P. Art. 1672 B in the absence of manifest error. Shafer v. State, Department of Transportation and Development, 590 So.2d 639 (La.App. 3rd Cir.1991).
Plaintiffs initially argue that they made out a prima facie case of negligence and/or strict liability against the state and L.J. Earnest, Inc. for the failure to properly sign the end of the construction zone. Essentially, plaintiffs assert that the state and its contractor had a duty to alert motorists, through the erection of signs, as to how to proceed while exiting the construction zone. Plaintiffs' argument necessarily requires an assumption that the driver of the lead vehicle stopped due to her confusion as to how to proceed at the end of the construction zone. However, there are other reasonable hypotheses as to why the driver of the lead vehicle stopped. For example, her car may have stalled. Clearly, plaintiffs' allegations that Jane Doe's confusion over the lack of signs was a cause of her stopping and the subsequent accident is at best supposition. The failure to erect signs must be a cause of the accident for the DOTD and L.J. Earnest to be liable for resulting damages. See, Forest v. State, Louisiana Department of Transportation and Development, 493 So.2d 563 (La.1986); Pinion v. Louisiana Farm Bureau, 590 So.2d 1230 (La.App. 1st Cir.1991), writ denied, 592 So.2d 1301 (La.1992).
Moreover, highway construction projects do not create an unreasonable risk of harm to the public such that principles of strict liability may be applied in the absence of very unusual circumstances. Golden v. Madden Contracting Company, Inc., 469 So.2d 1039 (La.App. 2d Cir.1985), writ denied, 475 So.2d 363 (La.1985); Brandon v. State, Department of Highways, 367 So.2d 137 (La.App. 2d Cir.1979), writ denied, 369 So.2d 141 (La.1979). Plaintiffs do not direct us to nor do we find the existence of such unusual circumstances creating an unreasonable risk of harm in the instant case. Strict liability principles are therefore inapplicable.
Under a negligence theory, the DOTD's standard of care in an area of highway under construction is somewhat less than the standard of care required in a portion of the highway not under construction. However, there is a duty to warn motorists of dangerous construction conditions. Golden v. Madden Contracting Company, Inc., supra; Brandon v. State, Department of Highways, supra. The DOTD's duty is to exercise reasonable care to warn motorists of any dangerous conditions in a construction zone. Golden v. Madden Contracting Company, Inc., supra; Alford v. Estate of Zanca, 552 So.2d 7 (La.App. 5th Cir.1989).
Reasonable care requires and the DOTD owes a duty to erect barricades, signs, and adequate warnings to alert the motoring public of extremely dangerous, trap-like hazards, unusual obstructions, perilous conditions, or defects in the road. Whether a warning is required, reasonable, or adequate is determined by the place where the danger exists, the nature of the road, and the general situation and circumstances surrounding it. Consideration is to be given to all of the facts, together with the kind and speed of vehicles in order to determine whether the DOTD has discharged its duty. Brown v. State Department of Transportation and Development, 572 So.2d 1058 (La.App. 5th Cir. 1990), writ denied, 581 So.2d 710 (La.1991); Lam v. State, Department of Transportation and Development, 495 So.2d 359 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 1017 (La.1986).
*231 We find no error in the trial court determination that the DOTD and L.J. Earnest, Inc. had no duty to erect signs at the end of the construction zone. We do not see the end of the construction zone as presenting an extremely dangerous trap-like hazard or perilous condition. The one lane westbound through the construction zone reopened into several lanes for westbound traffic. The only reasonable reaction for a driver in such a situation would be to proceed in any of the now several westbound lanes. Any warnings necessary for traffic merging from the Hamilton Road access ramp would clearly be more properly directed to the traffic entering the interstate and not for traffic already on the interstate. Nothing indicates that the end of this construction zone was a hazardous site which would require a sign advising motorists how to proceed. A sign advising motorists not to stop at the end of a construction zone would serve little purpose. The reasonable motorist should be aware, without the need to be warned by a sign, that one does not stop where the only available lane of traffic through a construction zone returns to several lanes of traffic at the end of such construction zone.
Clearly, all drivers realized they were in a construction zone. The presence of the orange barrels, which had funneled westbound highway traffic into a single lane and had maintained such traffic flow for several miles, precludes any rational argument that a driver could have been unaware he or she was in a construction zone. Accordingly, knowledge that they were in a construction zone should have been sufficient to warn each driver to use extreme caution, maintaining both a proper speed and following distance. We find the DOTD and its contractor did not breach a duty to protect following motorists by warning a preceding motorist of the obviousnot to stop her vehicle at the end of a highway construction zone.
Plaintiffs' remaining argument is that the trial court erred in granting the motion for involuntary dismissal as to Bossier City and Officers Scott and Stockton. Plaintiffs cite Fischer v. Travelers Insurance Company, 429 So.2d 538 (La.App. 4th Cir.1983), writ not considered, 433 So.2d 159 (La.1983), as support for this assignment of error. In Fischer, a police officer and the city, as the officer's employer, were held liable for the officer's failure to submit or file an accident report where it deprived plaintiff of the opportunity to ascertain the identity of the driver of another vehicle involved in an accident with plaintiff and thus pursue a claim against that driver. The Fourth Circuit found the officer had violated his statutory duty pursuant to LSA-R.S. 32:398 D to investigate and report on any accident involving death, injury, or property damage in excess of $100. The breach of the officer's duty included the risk of harm which had occurred, as the purpose of the statute is to facilitate civil claims arising out of accidents. Clearly implicit in the Fischer decision is a finding that the driver of the other vehicle was liable for the injuries sustained by plaintiff in the automobile accident.
The inquiry in the instant case necessarily becomes whether the unknown driver of the lead vehicle was liable for any of the plaintiffs' injuries sustained in the second collision. In the absence of such a finding, there can be no liability on the part of the police officers or the city for releasing the lead driver without reporting her name and other pertinent information.
Plaintiffs argue that the driver of the lead vehicle stopped her automobile on the highway in violation of LSA-R.S. 32:141. However, as previously noted, plaintiffs presented no proof as to the reason the driver of the lead vehicle stopped. While plaintiffs assert that the driver of the lead vehicle was confused and thus stopped her vehicle, it is equally as reasonable and the evidence does not negate the possibility that the lead vehicle merely stalled. Where a vehicle stopped on the highway because it became disabled or stalled, there has been no violation of the prohibition against parking or stopping on a highway. LSA-R.S. 32:141 B; Lindstrom v. Arnold, 421 So.2d 1178 (La.App. 2d Cir. 1982), writ denied, 423 So.2d 1183 (La.1982).
Moreover, a violation of LSA-R.S. 32:141 constitutes negligence per se, but is only actionable when it is shown that the failure to follow the statute was a legal cause *232 of the accident. Rome v. State Farm Mutual Auto Insurance Co., 439 So.2d 1253 (La. App. 5th Cir.1983). A defendant's conduct is actionable where it is both a cause in fact of the injury and a legal cause of the harm incurred. The cause in fact test requires that "but for" the defendant's conduct, the injuries would not have been sustained. The legal causation test requires that there be a "substantial relationship" between the conduct complained of and the harm incurred. Morrison v. Johnston, 571 So.2d 788 (La. App. 2d Cir.1990), writ denied, 575 So.2d 367 (La.1991); Nichols v. Nichols, 556 So.2d 876 (La.App. 2d Cir.1990), writ not considered, 561 So.2d 92 (La.1990).
Legal cause, like cause in fact, is a question for the trier of fact. Wilson v. State, Department of Public Safety and Corrections, 576 So.2d 490 (La.1991); Fowler v. Roberts, 556 So.2d 1 (La.1989). Accordingly, we will not disturb the factual findings of the trial court in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The trial court found that any negligence by the driver of the lead vehicle was not a legal cause of the accident between the plaintiffs and Mr. Glenn. We find that factual finding is not clearly wrong. Implicit in the trial court's finding is the conclusion that any negligence on the part of the lead driver did not bear a substantial relationship to the second collision.
Although the lead driver's vehicle stopped in the only available lane of travel, this action did not substantially contribute to the plaintiffs' injuries. Kevin Poland, the driver of plaintiffs' vehicle testified that he was driving 40 miles per hour in the 45 mile per hour construction zone. Although only slightly more than one car length behind the Jane Doe vehicle, he was nevertheless able to stop his vehicle without causing any damage, although his vehicle did slightly touch the Jane Doe vehicle. At this point, there was no reason that both vehicles could not proceed to their respective destinations.
The second collision occurred shortly after the initial collision. It was described as anywhere from mere seconds to less than a minute after the initial collision. Nevertheless, the driver of the lead vehicle had sufficient time to pull her vehicle forward and closer to the median prior to the second accident. Additionally, Candace Poland Brown, in the back seat of the plaintiffs' vehicle, had time to turn around, view Mr. Glenn's vehicle and warn her brother and mother that Glenn's vehicle was about to hit them.
Clearly, Mr. Glenn was operating his vehicle at an unsafe speed for the construction zone and/or was inattentive in failing to observe the two vehicles stopped ahead of him. Ms. Brown described the Glenn vehicle as "barreling down the road." A reasonably prudent driver would have used increased caution when traversing a construction area. The possibility that traffic will stop due to construction activities should be anticipated. We find that the trial court reasonably concluded that any assumed negligence on the part of the driver of the lead vehicle in stopping her vehicle was not the legal cause of plaintiffs' damages as any negligence on the part of the driver of the lead vehicle did not bear a substantial relationship to the damages incurred by plaintiffs in the subsequent collision. Accordingly, Fischer v. Travelers Insurance Company, supra, is inapposite.
We find no manifest error in the trial court's granting of defendants' motions for involuntary dismissal of plaintiffs' case. Accordingly, the judgment appealed from is affirmed at plaintiffs' costs.
AFFIRMED.
MARVIN, J., concurs in the result.
NOTES
[*] Although a curator was appointed to represent Jane Doe and filed an answer in these proceedings, the curator did not appear at trial nor was any judgment rendered against Jane Doe or her insurer.