661 So.2d 691 (1995)
Barbara Helen BRADLEY, Plaintiff-Appellant,
v.
MORTON THIOKOL, INC., et al., Defendants-Appellants.
Nos. 27411-CA, 27412-CA.
Court of Appeal of Louisiana, Second Circuit.
September 29, 1995.
*693 Carl Rice and Associates by William F. Kendig, for appellant.
Blanchard, Walker, O'Quinn & Roberts by A.M. Stroud, III, for appellants.
Before HIGHTOWER, WILLIAMS and STEWART, JJ.
STEWART, Judge.
Plaintiff, Barbara Bradley, filed an action against her employer, Morton-Thiokol, Inc., James Womack, Dwayne Culverhouse, and several unnamed others, for an alleged intentional tort that occurred at the Red River Ammunition Plant in Minden, Louisiana. She later filed a suit for worker's compensation against the same defendants and Travelers Insurance. The two suits were later consolidated. At trial, Culverhouse and Womack were dismissed. The trial court dismissed plaintiff's tort claim and granted her claims for worker's compensation, awarding her $1,697.92 in temporary total disability benefits and $20,112.99 for medical expenses. Plaintiff and defendants appeal the judgment. For the assigned reasons, we affirm the decision of the trial court.

FACTS
This cause of action arises out of an incident that occurred at the Red River Arsenal ammunition plant in Minden, Louisiana. The plant is under contract with the defendant, Morton-Thiokol, Inc. On June 14, 1988, plaintiff Barbara Bradley was employed as an inspector at the plant on the M-4 line. Dwayne Culverhouse, a worker on the assembly line, placed a realistic-looking frog fishing lure inside a shell canister and sent it up the production line. Plaintiff, who was later determined to have a fear of frogs, reached into the canister in order to inspect it and removed the fishing lure.
Testimony adduced at trial reveals that James Womack, production supervisor at the plant, approached plaintiff. Claude Echols, another line worker, then told Womack to ask plaintiff if she had seen any frogs lately. *694 Womack patted plaintiff on the back and asked her the question. At that point, plaintiff began to feel nauseous, began to hyperventilate, and eventually fainted. Plaintiff was transported to Bossier Medical Center by ambulance because she believed that she had suffered a heart attack. It was later determined that plaintiff had not suffered a heart attack, but had suffered fleeting anginal syndrome due to a severe stress situation, hiatal hernia, reflux esophagitis, and probable exacerbation resolved. The plaintiff remained hospitalized at Bossier Medical Center overnight for a series of routine tests.
Two weeks later, the plaintiff was admitted to Brentwood Hospital where she remained hospitalized for five and a half weeks, primarily for the treatment of major depression and a simple phobia.
Plaintiff returned to work at the ammunition plant from August 16, 1988 to September 26, 1988. She later tried to work on February 5, 1989, but was unable to do so. The plaintiff was admitted to Schumpert Medical Center on February 19, 1989 for approximately one week. While there, she was diagnosed with major depression, single episode without psychotic features. The plaintiff never returned to work at the plant, but is now employed as a pharmacist's assistant.
As a result of the frog lure incident, plaintiff filed suit against Morton-Thiokol, James Womack, Dwayne Culverhouse, and several unnamed others. Plaintiff also filed a worker's compensation claim against the same three defendants and Travelers Insurance Company. The suits were consolidated. Dwayne Culverhouse and James Womack were later dismissed from both suits.
In its written reasons for judgment, the trial court dismissed the plaintiff's tort claim and found that plaintiff had been injured in the course and scope of her employment. The court awarded medical damages through August 10, 1988, totaling $20,112.99 and lost wages in the amount of $1,697.92.
The plaintiffs lodged an appeal on both the worker's compensation and tort claims. Defendants appeal only the award of worker's compensation benefits.

DISCUSSION
In assignments of error one and two, plaintiff contends that the trial court erred when it granted the defendants' motion for an involuntary dismissal of the plaintiff's tort claim pursuant to LSA-C.C.P. Art. 1672 B. As the basis for this contention, the plaintiff asserts that the act of placing a frog lure in a shell canister to be sent up the production line to plaintiff coupled with James Womack's undesired pat on plaintiff's back was the cause of plaintiff's subsequent emotional and physical problems.
LSA-C.C.P. Art. 1672 B provides:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In considering a motion for involuntary dismissal, LSA-C.C.P. Art. 1672 B requires the trial court to evaluate all of the evidence and render a decision based upon a preponderance of the evidence without any special inference in favor of the opponent to the motion. Poland v. Glenn, 623 So.2d 227 (La.App. 2 Cir.1993); Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2 Cir. 1988); Barnes v. Thames, 578 So.2d 1155 (La.App. 1 Cir.1991). An appellate court should not reverse an involuntary dismissal based on LSA-C.C.P. Art. 1672 B in the absence of manifest error. Poland v. Glenn, supra; Shafer v. State, DOTD, 590 So.2d 639 (La.App. 3 Cir.1991).
The Louisiana Worker's Compensation Act provides for compensation if an employee receives personal injury by accident arising out of and in the course and scope of employment. LSA-R.S. 23:1031. As a general rule, the rights and remedies granted to an employee therein are exclusive of all rights and *695 remedies against his employer, any officer or principal of the employer, or any co-employees. LSA-R.S. 23:1032. However, an exception to this rule provides that nothing therein shall affect the liability of an employer, principal, officer, or co-employee resulting from an "intentional act." Id.
In interpreting the statute, the Louisiana Supreme Court has held that compensation shall be an employee's exclusive remedy against an employer for an unintentional injury covered by the act, but that nothing shall prevent an employee from recovering from his employer under general law for an intentional tort. Caudle v. Betts, 512 So.2d 389 (La.1987), citing Bazley v. Tortorich, 397 So.2d 475 (La.1981).
In Caudle, the court defined battery as a harmful or offensive touching, resulting from an act intending the plaintiff to suffer such a contact. Caudle v. Betts, 512 So.2d at 391. The intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent. Id.
In the instant case, the trial court concluded that an intentional tort had not been committed and granted the defendants' motion for an involuntary dismissal. After a thorough review of the record in this case, we find no error in the trial court's determination that a battery had not been committed. There was no evidence presented at trial to indicate that the defendants in question intended a harmful or offensive contact with the plaintiff. Plaintiff argues that placing the frog lure in the shell canister coupled with the pat on her back by James Womack rises to the level of a battery. However, there is no proof that the defendants desired a harmful or offensive contact with the plaintiff or had knowledge that such contact would occur. James Womack testified that he touched plaintiff because it was his habit to touch the individuals that he supervised when he needed their attention, so that they would turn to face him. Womack further testified that when he approached the plaintiff and Claude Echols, it was simply to determine what the problem was. He clearly had no knowledge of the fishing lure prior to the incident or any knowledge of the plaintiff's susceptibility to emotional anxiety as a result of frogs. Thus, the trial court did not err in granting defendant's motion for involuntary dismissal.
We now address the defendants' only assignment of error. In it, defendants assert that the trial court erred in finding that plaintiff proved an "accident" and "injury" as those terms are defined by LSA-R.S. 23:1021 and as interpreted by the jurisprudence. Defendants argue that the plaintiff did not introduce sufficient proof of a mental injury and its causal relationship to a work-related accident.
In order to address this issue, we must first examine the Act's definition of "accident" and "mental injury" and the jurisprudence in effect at the time the cause of action accrued.
LSA-R.S. 23:1021(1) defines "accident" as an "unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury." The "event" which qualifies as an accident can be and often is a forceful and readily identifiable occurrence which causes injury to the employee. Sparks v. Tulane Med. Ctr. Hosp. & Clinic, 546 So.2d 138 (La.1989). However, under the jurisprudence, the sudden and unexpected appearance of a physical injury, such as a heart attack or stroke, is also viewed as an "accident." Id; See, e.g. Ferguson v. HDE, Inc., 270 So.2d 867, 869-70 (La.1972).
The "event" which triggers coverage, then, may be an unexpected and sudden or violent occurrence which causes injury, or it may be an unexpected change in the employee's physical condition which renders him incapable of working, a change caused at least in part by an employment incident. Sparks v. Tulane Med. Ctr. Hosp. & Clinic, supra.
In examining the term "injury" as defined by the Act, the Court held "[i]n summary, a mental injury induced by mental stress that is caused by an unexpected and sudden or *696 violent employment-related event may be compensable under the Act." Id. at 147-48.
We find that the trial court correctly held that the plaintiff proved by a preponderance of the evidence that she suffered a compensable "accident" and subsequent "injury" as defined by the Act and the holding in Sparks. Clearly, the transporting of the fishing lure down the M-4 line by employees of the plant on June 14, 1988 was the event that produced the plaintiff's injuries in this case. It is evident from the record that the plaintiff suffered a temporarily disabling injury, which prevented her immediate return to work. Prior to this incident, plaintiff was employed as an inspector on the M-4 line and had not missed work for a significant period of time prior to the incident. Plaintiff had previously been able to perform her duties in a competent manner. However, after the frog incident, plaintiff was hospitalized a few days later at Bossier Medical Center and was admitted for five and a half weeks to Brentwood Hospital for treatment.
Dr. Robinson, plaintiff's treating psychiatrist, testified that upon her first hospitalization at Brentwood, plaintiff exhibited signs of a panic disorder, a simple phobia of frogs, and major depression. He testified that plaintiff was unable to return to work. When the time to return to work drew nearer, plaintiff experienced a subjective increase in anxiety about returning to the plant and also exhibited physical reactions such as palpitations and sweatiness. The trial court found and we agree that the inability of plaintiff to return to work from the date of the incident until her first release from Brentwood on August 10, 1988, was the result of the unexpected and sudden events at the plant on June 14, 1988. Thus, defendants claims on this assignment have no merit.
In her third assignment of error, plaintiff argues that the trial court erred because it failed to find the medical treatment from August 11, 1988 through now causally related to the incident at Morton-Thiokol. Also, in assignment of error four, plaintiff contends that the trial court failed to apply the correct burden of proof regarding medical causation and failed to apply the presumption in favor of the treating physician over the examiner hired for the purpose of trial court testimony.
It is well-established that a court of appeal may not set aside a trial court's findings of fact unless it is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979). When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Id. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id.
In the instant case, there is ample evidence to support the conclusion that any treatment that plaintiff received after her first release from Brentwood Hospital was substantially related to the distress that she was experiencing in her marriage. Testimony adduced at trial reveals plaintiff even stated to Brentwood Hospital staff upon her release in August 1988 that she was cured of her phobia and could get on with her life. Moreover, the discharge summary completed by plaintiff indicated that she had totally accomplished the goal of overcoming her phobia and that her problem-solving skills had increased to deal with the phobia. After her release on August 10, 1988, plaintiff returned to work at the plant for six weeks before she sought additional treatment.
Dr. Robinson, plaintiff's own psychiatrist and the expert upon whom plaintiff heavily relies to establish the causal connection between her injuries and the incident at the plant, also testified that plaintiff's subsequent hospitalizations were due to her deteriorating relationship with her husband. He further *697 agreed that the phobia of frogs had receded to the background after her visit to Brentwood. The trial court accepted the testimony of Dr. Robinson and concluded that the stressors which prevented plaintiff from returning to work were obviously resolved before her release from Brentwood Hospital. These assignments also lack merit.
Plaintiff argues in assignment of error five that Morton-Thiokol arbitrarily and capriciously failed to pay the plaintiff's worker's compensation claim without probable cause. Plaintiff cites Morton-Thiokol's failure to investigate the claims of plaintiff as evidence of the company's bad faith.
A compensation insurer or employer is liable for attorney's fees when it arbitrarily, capriciously or without probable cause, terminates or refuses to pay benefits. LSA-R.S. 23:1201.2; Holmes v. Int'l. Paper, 559 So.2d 970 (La.App. 2 Cir.1990). The determination of whether the denial of compensation benefits is arbitrary, capricious, and without probable cause depends primarily upon the facts existing and known to the employer at the time the employer denies benefits. Id; Hughes v. General Motors Guide Lamp Div., 469 So.2d 369 (La.App. 2 Cir.1985). The determination is essentially a question of fact. Id. The failure to pay benefits is not arbitrary and capricious when it is based upon substantial bona fide factual contentions. Id.; Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977); Harrison v. Chicago Mill & Lumber Co., 446 So.2d 843 (La.App. 2 Cir. 1984).
In light of the unusual set of circumstances surrounding the claim for worker's compensation benefits in this case, we cannot conclude that the trial court erred in its denial of penalties and attorney's fees or that Morton-Thiokol acted in bad faith. The issue of whether there was a causal connection between the incident and the injury was a complex one that raised a legitimate and substantial legal question as to the entitlement to benefits.
Additionally, plaintiffs contention that the company failed to investigate the claim is incorrect. Immediately following the incident, the company conducted an investigation by obtaining statements from all of the persons who were known to have witnessed the events, including James Womack, Vicki Paxton, Dwayne Culverhouse, Claude Echols, and Sue Clements. Based on this investigation, the company denied benefits.
We find that the trial court did not err when it concluded that Morton-Thiokol did not act arbitrarily or capriciously in its initial denial of benefits. Thus, plaintiff's claims on this issue are denied.
In assignments of error six and seven, plaintiff claims that the trial court erred when it allowed the questions asked by defense counsel of Vicki Paxton and when it allowed questions of a witness regarding a ten year old prior conviction.
First, plaintiff argues that although Vicki Paxton was called by the plaintiff as a witness, she was employed by the defendant, and thus the trial court should have sustained the plaintiff's objection to defense counsel's leading questions.
The use of leading questions is largely within the discretion of the trial court. State v. Essex, 618 So.2d 659 (La. App. 2d Cir.1993). Upon review, we fail to see any clear abuse of discretion on the part of the trial court in allowing the questions.
Next, plaintiff cites as error, the failure of the trial court to sustain plaintiff's objections to attacks on a witness' credibility based on a conviction more than ten years old prior to trial.
La.Code of Evid. Art. 607(C) provides that a party may attack a witness's credibility concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of the witness's testimony. Here, counsel for defendant asked Reginald Shaw, a former employee of the plant, about his termination from Wade Correctional Center for lying. The witness admitted that he had been discharged for falsifying the portion of the employment application which asked if he had ever been arrested. When queried about the arrest, the witness admitted that he had been convicted of aggravated assault. The witness opened the door to this *698 line of questioning by taking the stand and explaining that he had been discharged from Wade for falsifying a document. We find no error in the trial court's failure to sustain the plaintiff's objections.

DECREE
For the foregoing reasons, we affirm the decision of the trial court dismissing plaintiff's tort claim and granting her worker's compensation claim for medical expenses in the amount of $20,112.99 for medical services from June 15 to August 10, 1988.
AFFIRMED.