708 So.2d 418 (1997)
Kelly J. SILVA, Plaintiff-Appellee,
v.
Dolon CALK, et al., Defendant-Appellant.
No. 30085-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1997.
*419 Nelson, Hammons & Self by Hutton W. Sentell, Shreveport, for Defendant-Appellant.
Hicks & Hubley by Craig O. Marcotte, Shreveport, for Plaintiff-Appellee.
*420 Before STEWART, GASKINS and PEATROSS, JJ.
GASKINS, Judge.
The plaintiff-in-reconvention, Dolon Calk, appeals from a trial court judgment granting a motion for involuntary dismissal in favor of the defendant-in-reconvention, Kelly J. Silva. For the following reasons, we affirm the trial court judgment.

FACTS
On November 14, 1994, Ela Calk, wife of Dolon Calk, was involved in an automobile accident with Kelly Silva. Mrs. Calk was proceeding west on Southfield Road in Shreveport and Ms. Silva was eastbound on Southfield in a pickup truck, with her parents as passengers. Southfield is a four lane road with a grassy median. Traffic on Southfield at the intersection is not controlled by a stop sign or a traffic light. There is a left turn lane for cars turning from Southfield onto Anniston. Mrs. Calk turned left from Southfield onto Anniston, in front of Ms. Silva. Ms. Silva's father called out to her to watch out immediately before the impact. Ms. Silva collided with the Calk vehicle near the right rear door and knocked the Calk car into a stop sign on Anniston. Mrs. Calk suffered two broken ribs, bruising and muscle spasms in her back. She was taken by ambulance to a local hospital. Ms. Silva and her passengers did not require immediate medical attention.
On November 13, 1995, Ms. Silva filed suit against Mr. and Mrs. Calk and their insurer, State Farm Mutual Automobile Insurance Company for damages arising from the accident. Ms. Silva asserted the negligence of Mrs. Calk as the cause of the accident and alleged that because she was operating the vehicle with the permission of Mr. Calk, he was solidarily liable with his wife for damage caused to Ms. Silva. On November 20, 1995, more than one year after the accident, but only a few days after the suit was filed, Mrs. Calk died from causes unrelated to the accident.
On January 17, 1996, Dolon Calk filed a reconventional demand against Ms. Silva and her insurer, also State Farm, claiming that Mrs. Calk began her turn into the intersection while the Silva truck was half a block away, that Ms. Silva should have been able to see Mrs. Calk enter the intersection and should have stopped prior to striking the Calk vehicle. Mr. Calk contended that the accident occurred on a clear day and there were no obstructions to prevent Ms. Silva from seeing Mrs. Calk enter the intersection. Mr. Calk claimed that Ms. Silva was operating her vehicle at an unsafe and excessive speed, that she failed to maintain a proper lookout, that she failed to yield when Mrs. Calk preempted the intersection and that she failed to apply her brakes. Mr. Calk alleges that Ms. Silva operated her vehicle in a careless and reckless manner. Mr. Calk sought recovery for property damage, Mrs. Calk's medical bills, her pain and suffering and for Mr. Calk's loss of consortium. He sought judgment against Ms. Silva "for a sum that will fairly and adequately compensate him for the losses that he and his wife sustained as a result of the accident described herein."[1] Ms. Silva's claim against the Calks and State Farm was settled prior to trial, leaving only those issues raised by Mr. Calk for consideration.
On December 30, 1996, the parties entered into a joint stipulation of facts. The parties agreed that Mr. Calk's vehicle was damaged in the accident and that State Farm paid $5,805 under the collision provision of the Calk's policy. They also stipulated that Mrs. Calk received medical treatment in the Highland Hospital emergency room and that $651 for this expense and $304 in doctor bills were paid by State Farm. The parties further stipulated that the accident had no connection with Mrs. Calk's death in November, 1995. The parties agreed to admit photographs of the vehicles and the scene of the accident as well as Mrs. Calk's medical records and her physician's notes and written report.
*421 On January 8, 1997, the matter came before the trial court for a hearing solely on the issues raised by Mr. Calk in his reconventional demand. The joint stipulation of facts was admitted along with the photographs and documentary evidence discussed above. Ms. Silva was then called to testify by Mr. Calk. She stated that the accident occurred shortly after noon on a clear day and that there was nothing obstructing her view of the road ahead. She said that she did not apply her brakes because she did not see the Calk vehicle until it was right in front of her. Ms. Silva stated that her father called out for her to watch out just before the impact. Ms. Silva also stated that she was driving at about 30 m.p.h. at the time of the accident. The speed limit in the area is 35 m.p.h.
Mr. Calk then testified that his wife was injured in the accident, suffering two broken ribs and back spasms. He stated that she slept in a recliner for two weeks after the accident and then "lay in bed for another month." During this period, Mr. Calk testified that he performed all household duties. Neither party deposed Mrs. Calk, therefore the record is devoid of her testimony. Mr. Calk rested his case.
Following the presentation of Mr. Calk's case, Ms. Silva moved for a motion for involuntary dismissal. The trial court met with counsel in chambers and then allowed Mr. Calk's attorney to question Ms. Silva again. Ms. Silva testified that, at the time of the accident, she was proceeding east on Southfield, which is a four-lane road. Southfield is the primary road and Anniston is a secondary, two lane road load intersecting with Southfield. Ms. Silva stated that there were two cars in front of her at the intersection of Southfield and Grover, the intersection before Anniston. The intersection at Grover is controlled by a traffic light. Ms. Silva said that one car turned right onto Grover and the other car proceeded in front of her and was about 100 feet ahead of her, but was not obstructing her view of the intersection with Anniston. Regarding Ms. Calk, Ms. Silva stated, "I did not see the vehicle until just prior to the impact when my dad had said something about look out for the vehicle. And I couldn't stop, I couldn't brake. I didn't have time to do anything, the vehicle was right there in front of me."
Mr. Calk's counsel then questioned Ms. Silva regarding the photographs of the vehicles and the scene and then rested his case again. Ms. Silva reasserted her motion for involuntary dismissal, which was granted by the trial court. On January 15, 1997, the trial court signed a judgment granting the dismissal.
Mr. Calk appealed, arguing that the trial court erred in sustaining the motion for involuntary dismissal. He also contends that the trial court erred in failing to recognize applicable presumptions of law in this case.

INVOLUNTARY DISMISSAL
Mr. Calk argues that the trial court erred in sustaining the motion to dismiss where he established through testimonial and documentary evidence a prima facie case of liability against Ms. Silva. He contends that the evidence shows the intersection involved had no traffic light and the accident occurred on a sunny, clear day. Ms. Silva was driving in the outside right lane, eastbound, and there was nothing obstructing her vision. She testified that she did not try to change lanes, did not see Mrs. Calk prior to the impact, the impact occurred in Ms. Silva's lane, and that she took no evasive action. Mr. Calk asserts that where a collision occurs between two automobiles at an intersection, the vehicle which first entered the intersection has the right to proceed, having the right of way over approaching cars at right angles, even if they are on the favored street. Mr. Calk argues that the trial court based it decision entirely on the testimony and did not consider the photographs of the scene and of the vehicles. Mr. Calk contends that the trial court could infer from the facts that Ms. Silva was not paying attention to the road in a reasonable and prudent manner and that she was exceeding the posted speed limit. He asserts that the driver on the preferred street is not relieved of the duty of exercising ordinary care. He claims that Ms. Silva should have seen the Calk vehicle under the circumstances and should have taken evasive action and her failure to do so establishes her *422 fault in causing the accident. These arguments are without merit.
In civil suits, the plaintiff bears the burden of proving the negligence of the defendant by a preponderance of the evidence. Moreover, a plaintiff-in-reconvention bears the burden of establishing his claim in the same manner as the plaintiff in the main demand. Miller v. Leonard, 588 So.2d 79 (La.1991). Proof by direct or circumstantial evidence is sufficient to constitute a preponderance of the evidence when the entirety of the evidence establishes the fact or causation sought to be proved is more probable than not. If the party bearing the burden of proof fails to satisfy his burden by a preponderance of the evidence, his case fails to outweigh his opponent's case and he necessarily loses. Miller v. Leonard, supra.
Regarding motions for involuntary dismissal, La.C.C.P. art. 1672(B) provides:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
Akin to the directed verdict, a motion for involuntary dismissal is allowed at the close of the plaintiff's evidence in a bench trial. The movant requests dismissal of the action as to him on the ground that, based upon the facts and the law, the plaintiff has failed to show a right to relief. King of Hearts, Inc. v. Wal-Mart Stores, Inc., 27,137 (La.App. 2d Cir. 8/23/95), 660 So.2d 524; Vig v. City of Shreveport, 28,530 (La.App.2d Cir. 8/21/96), 679 So.2d 524, writ denied 96-2285 (La.11/15/96), 682 So.2d 775.
In making its determination on such a motion, the trial court is not required to review the evidence in the light most favorable to the plaintiff, as is done when a motion for directed verdict is filed in a jury case. Unlike a motion for directed verdict in a jury trial, a motion for involuntary dismissal pursuant to La.C.C.P. art. 1672 B requires a judge to evaluate the evidence and render a decision based upon a preponderance of the evidence, without any special inference in favor of the party opposing the motion. Poland v. Glenn, 623 So.2d 227 (La.App. 2d Cir.1993), writ denied 629 So.2d 1171 (La. 1993); Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2d Cir.1988); McCurdy v. Ault, 94-1449 (La.App. 1st Cir. 4/7/95), 654 So.2d 716, writ denied 95-1712 (La.10/13/95), 661 So.2d 498. Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Fuller v. Wal-Mart Stores, Inc., supra.
An appellate court should not reverse an involuntary dismissal based on La. C.C.P. art. 1672 B in the absence of manifest error. Sallis v. City of Bossier City, 28,483 (La.App.2d Cir. 9/25/96), 680 So.2d 1333, writs denied 96-2592 (La.12/13/96), 692 So.2d 376 and 96-2599 (La.12/13/96), 692 So.2d 1063; Vig v. City of Shreveport, supra; Poland v. Glenn, supra. The two part test for appellate review is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Stobart v. State, Through the Department of Transportation and Development, 617 So.2d 880 (La.1993); Robinson v. Dunn, 96-0341 (La.App. 1st Cir. 11/8/96), 683 So.2d 894, writ denied 96-2965 (La.1/31/97), 687 So.2d 410. Thus, the reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. The issue to be resolved is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Even though the appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences *423 of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Through the Department of Transportation and Development, supra; McCurdy v. Ault, supra.
In this case, Mrs. Calk executed a left turn in front of Ms. Silva. A driver making a left turn has a statutory duty under La. R.S. 32:122 to "yield the right of way to all vehicles approaching from the opposite direction which are so close as to constitute an immediate hazard." A left turn is one of the most dangerous maneuvers a motorist may execute and requires the exercise of great caution. Before attempting a left turn, a motorist should ascertain whether it can be completed safely. Theriot v. Lasseigne, 93-2661 (La. 7/5/94), 640 So.2d 1305; Clements v. Continental Insurance Company, 277 So.2d 714 (La.App. 2d Cir.1973); Sons v. Delaune, 634 So.2d 1212 (La.App. 1st Cir. 1993), writ denied 94-0729 (La. 5/6/94), 637 So.2d 1050.
In a vehicular collision case, the plaintiff may take advantage of a presumption of the defendant's negligence when the plaintiff proves that the defendant executed a left hand turn and crossed the center line at the time of the impact. Miller v. Leonard, supra. The burden rests heavily on the motorist who desires to make a left turn to explain how the accident occurred and to show that he is free of negligence. Miller v. Leonard, supra; Thompson v. Chevron U.S.A., Inc., 94-1107 (La.App. 1st Cir. 4/7/95), 653 So.2d 1351, writ denied 95-1173 (La.6/23/95), 656 So.2d 1019.
Ms. Silva testified that Mrs. Calk turned left in front of her and that she was unable to stop in time to avoid a collision. Mr. Calk offered no testimony or evidence whatever to overcome the presumption that Mrs. Calk was negligent in making her left turn in front of the Silva vehicle other than to argue that his wife had preempted the intersection at the time her vehicle was struck by Ms. Silva and that, as a decedent, she is entitled to the presumption that she would have acted reasonably and prudently in all respects to preserve her safety and life. We find that neither presumption operates in this case to show that Ms. Calk was free from negligence.
The doctrine of preemption arises from La.R.S.32:121 A which provides: "When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left, shall yield the right of way to the vehicle on the right." The preemptive right accorded by this statute is not obtained unless the driver on the inferior street, after exercising due care, proceeds into the intersection when, to a reasonably observant motorist, it is reasonably safe to do so. Preemption does not result from merely entering an intersection first. Ernst v. O'Bannion, 278 So.2d 830 (La.App. 3d Cir. 1973), writ denied 281 So.2d 749 (La.1973); Simmons v. Baumgartner, 393 So.2d 904 (La.App. 4th Cir.1981).
In order to preempt an intersection, the motorist must show that he made a lawful entry, at a proper speed, after ascertaining that oncoming traffic was sufficiently removed as to permit a safe passage and under the bona fide belief and expectation that he can negotiate a crossing with safety. Burge v. Doty, 279 So.2d 273 (La.App. 2d Cir.1973), writ denied 281 So.2d 757 (La.1973); Funderburk v. Temple, 268 So.2d 689 (La.App. 1st Cir.1972), writ denied 270 So.2d 875 (La. 1973); Cloney v. Smith, 441 So.2d 342 (La. App. 5th Cir.1983), writ denied 444 So.2d 608 (La.1984). He must show that he entered the intersection at a proper speed and sufficiently in advance of the vehicle on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle. Burge v. Doty, supra; Tillman v. Massey, 445 So.2d 749 (La.App. 4th Cir. 1984), writ denied 446 So.2d 743 (La.1984).
Therefore, before one can benefit from the doctrine of preemption, he must establish that he entered the intersection first, that his entry was made after first ascertaining that the intersection traffic was so far removed so as to allow his safe passage without causing the other vehicle to make an emergency stop and that he entered the intersection with the bona fide belief and expectation that he could cross safely. Tillman v. Massey, supra.
*424 Mr. Calk offered no evidence to satisfy his burden of proof on preemption other than to argue that, due to the fact that the point of impact was on the rear passenger door, Mrs. Calk had entered the intersection first. No evidence was presented to establish that Mrs. Calk made an effort to determine that oncoming traffic was so far removed as to allow her safe passage or that she entered the intersection with the bona fide belief and expectation that she could cross safely. Therefore, Mr. Calk has failed to carry his burden of proving that Mrs. Calk had preempted the intersection and therefore, she was not liable for the collision.
Mr. Calk also argues that the presumption of negligence of a left turning motorist should not apply in this case because a decedent is entitled to the presumption that she would conduct herself reasonably and prudently in all respects to preserve her safety and her life, citing Nowell v. State Farm Mutual Automobile Insurance Company, 576 So.2d 77 (La.App. 2d Cir.1991), writ denied 580 So.2d 923 (La.1991) and Kincade v. Doll, 472 So.2d 60 (La.App. 4th Cir. 1985), writ denied 477 So.2d 105 (La.1985). See also Davila v. Southern Pacific Transportation Company, 444 So.2d 1293 (La.App. 5th Cir.1984), writ denied 447 So.2d 1079 (La.1984). However, we find that Mr. Calk has failed to show that the presumption is applicable in this case. In those instances in which the presumption has been applied, the decedent died as a result of injuries in the accident forming the basis of the lawsuit and was unable to give any statement regarding how the accident occurred. In this case, Mrs. Calk did not die until more than one year after the accident and the parties stipulated that her death was unrelated to the accident. Her testimony could have been preserved. However, this was not done and the record is completely silent as to Mrs. Calk's account of how the accident occurred. Mr. Calk has provided no authority to support his argument that the presumption of reasonable and prudent action is applicable where the decedent died long after the accident, from causes unrelated to the accident and could have given a statement regarding the accident prior to death. Under these circumstances, the presumption cited by Mr. Calk does not operate to absolve Mrs. Calk of the presumption of liability as a left turning motorist.
In order to be successful as the plaintiff-in-reconvention, Mr. Calk had the burden of proving that Ms. Silva operated her vehicle in a careless and reckless manner and that she breached her duty of proceeding with ordinary care. He also had the burden of overcoming the presumption of negligence attributable to Mrs. Calk as a left turning motorist and he had the burden of showing that Mrs. Calk preempted the intersection. In support of his case, Mr. Calk presented only the photographs of the vehicles and the intersection and the testimony of Ms. Silva. Ms. Silva stated that she was traveling at 30 miles per hour, 5 miles below the posted speed limit. She stated that she did not see the Calk vehicle prior to the impact. According to Ms. Silva, her father shouted his warning at about the time the impact occurred.
From the photographs and the testimony of Ms. Silva, the trial court concluded that Mr. Calk failed to show that Ms. Silva was negligent or that her behavior was a cause of the collision. We do not find that the trial court was manifestly erroneous or clearly wrong in its finding. Mr. Calk simply failed to meet his burden of proving that Ms. Silva operated her vehicle negligently. Based upon the scant evidence and testimony submitted at the hearing, the fact finder could reasonably conclude that Ms. Calk turned in front of Ms. Silva at a time when it was not safe to do so and that Ms. Silva could not have seen her in time nor did she have time to brake or take evasive action to avoid the accident. The trial court obviously found that Mr. Calk failed to show that Ms. Silva breached her duty of ordinary care or that she failed to see what she should have seen. Therefore, we do not find reversible error in the trial court's decision granting a motion for involuntary dismissal in favor of Ms. Silva.

CONCLUSION
For the reasons stated above, we affirm the trial court ruling granting a motion of *425 involuntary dismissal in favor of the defendant-in-reconvention, Kelly J. Silva, dismissing the claims of the plaintiff-in-reconvention, Dolon Calk. All costs in this court and in the court below are assessed to Mr. Calk.
AFFIRMED.
NOTES
[1] The record does not show that Mr. Calk had substituted himself for Mrs. Calk under La.C.C.P. art. 801, following her death.