I,GASKINS, J.
The defendants, Christine Mims and Safeway Insurance Company of Louisiana, appeal from a trial court judgment which found Mims liable for an auto accident which occurred when she made a left turn in the path of Cyndra Shelton, the plaintiff. We affirm.
FACTS
On March 16, 2001, at approximately 8:00 a.m., Mims was operating a 1987 Toyota Camry in the inside, eastbound lane of Stoner Avenue, while Shelton was operating a 1994 Mazda Miata, traveling westbound on Stoner. At its intersection with Highland Avenue, Stoner Avenue consists of four lanes of traffic, and the intersection is controlled by a traffic light. Just prior to the accident, Mims had stopped in the inside, eastbound lane of Stoner in order to turn left onto Highland Avenue.
Shelton, who was traveling in the inside westbound lane of Stoner Avenue, switched to the outside westbound lane as she approached the intersection with Highland Avenue. Mims proceeded to turn left onto Highland as Shelton arrived at the intersection, and the right front portion of Shelton’s vehicle struck the right rear quarter panel of Mims’ vehicle.
In April 2001, Shelton filed suit against Mims and her insurer, Safeway Insurance Company of Louisiana. Allstate Insurance Company, the insurer of Shelton’s vehicle, later intervened, seeking reimbursement of payments made by Allstate to Shelton. *1227 In March 2002, Mims filed a reconventional demand against Shelton and Allstate. Although the trial court allowed the recon-ventional demand to be filed, it was severed from the principal demands of the plaintiff.
| ¡.At trial, Shelton testified that as she approached the intersection, she saw that there were three cars stopped at the green light. She then moved into the right-hand lane, and as she did so, a car that had been stopped at the light made a left turn in front of her. Shelton estimated that she made her lane change approximately 50 feet from the intersection, putting on her turn signal and moving into the right-hand lane. She also estimated that she was about 30 feet from the intersection when she first realized that she was going to have a collision. She estimated her speed at 35 miles per hour, which was the speed limit, and she stated that she maintained her speed up to the point that she hit her brakes prior to impact with Mims’ vehicle. Shelton did not see Mims’ vehicle stopped at the intersection before Shelton switched lanes, but noticed Mims’ vehicle “pulling through the intersection” when Shelton was about 30 feet from the intersection.
Mims testified that on the morning of the accident she was on her way to Brent-wood Hospital for an employment-related orientation session. She was headed east on Stoner and was in the left-turn lane waiting to make a left-hand turn onto Highland. She stated there were no vehicles in front of her in her lane, but there were about three vehicles in the inside lane of Stoner headed in the opposite direction from her. She testified that two of these vehicles came out of the inside lane and went around a vehicle that was stopped in the inside westbound lane. These two vehicles went straight on Stoner, and Mims continued to sit at the intersection waiting to turn. Mims indicated the vehicle waiting to turn was a truck. She stated that she saw no vehicles coming. However, when she had turned onto Highland [ ..¡Avenue, the back of her car was impacted by a vehicle that she did not see prior to the impact. Mims insisted that she had turned completely onto Highland at the time of the impact. Mims also testified there was ño turn signal at the intersection, and that the light was still green when she made her turn.
Mary Ellen Okray and her husband, Donny Ray Okray, testified on behalf of the defendants as witnesses to the accident. According to Mrs. Okray, she was driving a 1990 Chevrolet Beretta westbound on Stoner at the time of the accident. As she approached the intersection with Highland Avenue, she stated that the caution light came on, that she came to a stop, and that she was the first car stopped at the intersection. She indicated that she had seen “a lot of accidents” at the intersection, so when the light turned yellow, she always stopped. Mrs. Okray testified that at the time of the collision, there were no vehicles behind her other than a vehicle that was far enough from the intersection to not yet come to a stop. She also indicated that she had remarked to her husband about Shelton’s vehicle, which she could see in her rearview mirror, “proceeding kind of fast behind me.” However, she admitted that she did not know whether or not Shelton was exceeding the speed limit. In her rearview mirror, Mrs. Okray saw Shelton’s vehicle change to the outside lane and go “through the light” where the impact occurred. Mrs. Okray estimated that the impact occurred a “couple of seconds” after the light had turned yellow.
Mr. Okray was in the front passenger seat of the Chevrolet Beretta at the time of the accident. He stated that he and his wife were stopped at the | intersection of Stoner and Highland, and that the light *1228 “was on yellow, and you couldn’t beat the light when it was on yellow.” He testified that it then turned red. Like his wife, he indicated that there were no cars ahead of theirs at the intersection. He testified that when Shelton’s vehicle came around theirs, “it hit the car coming from Highland — coming down Highland.... ” He identified Mims’ vehicle as a blue Toyota Célica, and stated that he first noticed the vehicle “when it got hit.” He indicated that the impact occurred in the middle of Stoner “up under the light.” Both Mr. and Mrs. Okray indicated that they knew Mims prior to the accident because she worked where Mrs. Okray used to work. However, they indicated that they did not see Mims socially.
At the conclusion of the trial, the court specifically found Shelton to be a credible witness. The court held that the cause of the accident was Mims’ turning left in front of Shelton at the intersection, and the court placed the full responsibility for the accident on Mims. The court awarded Shelton general damages of $5,000.00, medical expenses of $2,450.00, and property damages of $380.50. Judgment in favor of the intervenor, Allstate, and against Safeway and Mims was given for property damage of $1,883.37.
Mims and her insurer appealed.
LAW
A driver making a left turn has a statutory duty to “yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate |shazard.” La. R.S. 32:122. A left turn is one of the most dangerous maneuvers a driver may execute and requires the exercise of great caution. Before attempting a left turn, a driver should ascertain whether it can be completed safely. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305; Silva v. Calk, 30,085 (La.App.2d Cir.12/10/97), 708 So.2d 418; Hughes v. Scottsdale Insurance Company, 35,043 (La.App.2d Cir.8/22/01), 793 So.2d 537. The burden rests heavily on the motorist who desires to make a left turn to explain how the accident occurred and to show that he is free of negligence. Silva v. Calk, supra; Hughes v. Scottsdale Insurance Company, supra.
Credibility determinations are subject to the strictest deference and the manifest error-clearly wrong standard demands great deference for the trier of fact’s findings. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong but whether the factfinder’s conclusion was a reasonable one. Stobart, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra.
IfiDISCUSSION
The defendants argue that Shelton’s testimony was contradictory and not credible. They also contend that Shelton did not have “carte blanche” to enter the intersection simply because she observed a green light. Instead, they argue that Shelton was required to at least “perform a cursory exam of the intersection.”
Our review of the testimony reveals no major inconsistencies in Shelton’s testimony. To the contrary, the testimony reveals that prior to making a left turn, one of the most dangerous maneuvers a driver can *1229 execute, Mims failed to observe the Shelton vehicle — even though there was, by her own admission, no reason why she could not have seen it. Thus, Mims did not ascertain whether her left turn could be completed safely before engaging in this maneuver.
We cannot conclude that the trial court’s conclusions of fact were manifestly erroneous, especially in view of the conflict in the testimony among the witnesses. Mims testified that the vehicle stopped at the intersection in the opposite direction was a truck, whereas the occupants of the vehicle, the Okrays, both testified that their vehicle was a Chevrolet Beretta. Furthermore, while Mr. Okray stated that Mims’ vehicle was coming from Highland when it was hit, Mims plainly was traveling on Stoner and attempting to make a left turn onto Highland. Mims testified that the collision took place after she already had turned completely onto Highland, but the testimony of the other witnesses, as well as logic, placed the point of impact in the intersection. There would have been no reason for |7Shelton to veer onto Highland Road and strike Mims’ vehicle. Also, Shelton and Mims agreed that the light facing both of them was green. Mrs. Okray testified that the light was yellow. Her husband testified that it was first yellow, then red; he also inexplicably testified that the light facing Mims was green — apparently reasoning that because cars were going through the intersection, it must have been green.
Shelton admittedly did not slow her vehicle as she approached the intersection; nevertheless, Shelton had the right to proceed through the intersection at the posted speed limit if the light was green. The trial court obviously believed that Shelton was truthful when she stated that she was driving within the posted speed limit and that the light was green as she approached the intersection.
Ultimately, this case comes down to a determination of credibility. The trial court, which heard the testimony and viewed the witnesses first-hand, was in a far better position than this court to assess credibility. Accordingly, we will not disturb that credibility determination.
CONCLUSION
The trial court judgment is affirmed. Costs in this court are assessed against the defendants.
AFFIRMED.