CLARENCE E. McMANUS, Judge.
| ¡¡This litigation arises out of an automobile accident. Plaintiff was proceeding through an intersection when she was struck on the left side by defendant who was executing a left hand turn. Prior to trial, plaintiff stipulated that her damages did not exceed $50,000.00. After trial on the merits, the court rendered judgment in favor of plaintiff, finding that defendant was 90% fault and plaintiff 10% fault in the cause of the accident. The trial court awarded general damages of $24,700.00, and special damages for medical expenses of $15,157.40, to be reduced by the 10% fault allocated to plaintiff. Defendants filed this appeal, alleging that the trial court erred in finding defendant at fault for the cause of the accident. Plaintiff answered the appeal, requesting that this Court reduce or eliminate the fault found, and further alleging that the damages awarded were inadequate. For the reasons that follow, we amend, and as amended, affirm the decision of the trial court.
This accident occurred late afternoon on March 24, 2000 at the intersection of Vintage and Monte Carlo, in Kenner, Louisiana. Plaintiff testified that she was northbound on Vintage. Prior to the intersection the street widens and becomes two lanes. She moved to the right lane, in anticipation of making a right turn at the following intersection. There were ears in the left lane, and the traffic was heavy. | ¡¡As she was crossing the intersection, she was hit on the driver’s side door. The impact caused her car to spin around, jump a curb and hit a tree.
Defendant testified that she was southbound on Vintage, intending to make a left turn onto Monte Carlo. There was a red pickup truck northbound at the intersection, and the driver waved her through. She executed the left hand turn and struck plaintiffs vehicle. Defendant stated that she did not see plaintiffs vehicle prior to the accident. Defendant contends that Vintage is a one-lane street until after the intersection, and that plaintiff was driving in the parking lane. Defendant admitted that she was issued a traffic citation, which was dismissed when the witnesses failed to show up in court.
The deposition testimony of Simone Gordon, a witness to the accident, was introduced into evidence. She was southbound on Vintage, which at that point was a one lane street with a parking lane. Signs were posted stating that one should not drive or park in the parking lane. She stated that she was following the plaintiff, and when the plaintiff pulled into the right lane, she did too. There were two or three vehicles in front of plaintiff at that time. When Ms. Gordon pulled over, she realized that she was in the parking lane.
The deposition testimony of Freddy Sandino, the Kenner police officer who investigated the accident, was also introduced into evidence. He stated that after obtaining the facts of the accident, he cited defendant for failure to yield. He did not cite plaintiff. He further said that while plaintiff might have traveled in the parking lane, she was out of that lane when the accident occurred.
Lawrence Hamm, and accident recon-structionist and consulting engineer examined the site where the accident occurred. He testified as trial, not as an expert, but as a fact witness. He stated that on August 8, 2002, he went to the intersection where the accident occurred, and he took *630 photographs and | ¿measurements. ■ The road close to the intersection median was 24 feet wide from median to curb. A lane on the interstate is twelve feet wide, so there is sufficient roadway for two lane travel. The solid white line delineating the parking lane ended 33 feet before the intersection. Past the intersection, Vintage is clearly marked as a two lane road. Photographs taken by M-r. Hamm show a white line painted across the entire expanse of the street. There are two signs, one on each side'of the street, cautioning motorists to avoid blocking the intersection.
In this appeal, defendants allege that the trial court erred in finding defendant at' fault for the accident. Plaintiff answers, alleging that the trial court erred in assessing her with 10% fault, because she was fault free in this accident.
On appellate review, the court’s function is to determine whether the findings of the trier-of-fact were clearly wrong or manifestly erroneous. Himel v. State ex rel. Dept. of Transp. and Development, 04-274, p. 8 (La.App. 5th Cir.1/12/04), 887 So.2d 131, 137-138, writ denied, 04-2802 (La.3/18/05), 896 So.2d 999; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Himel, 04-274 at p. 8, 887 So.2d at 137-138; Rosell, 549 So.2d at 844. The issue to be resolved by the reviewing court is not whether the fact-finder was. right or wrong, but whether its conclusion was a reasonable one. Himel, 04-274 at p. 8, 887 So.2d at 138; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).
LeBlanc v. Baxter, 05-33 (La.App. 5 Cir. 5/31/05), 905 So.2d 415, 426.
Furthermore,
The allocation of fault between comparatively negligent parties is a finding of fact. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. Accordingly, an appellate court may only reallocate fault if it finds the trial court was clearly wrong or manifestly erroneous in its allocation of fault, even if the reviewing court would have decided the case differently had it been the original trier of fact. (Citations omitted)
LaFleur v. Martin, 04-516 (La.App. 5 Cir.2004), 890 So.2d 26, 29-30, citing Gregor v. Argenot Great Cent. Ins. Co., 02-1138 (La.5/20/03), 851 So.2d 959, 968.
Defendant, at the time of the accident, was executing a left hand turn at an intersection. LSA-R.S. 32:122 provides that:
The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.
A left turn is one of the most dangerous maneuvers a driver may execute and requires the exercise of great caution. Before attempting a left turn, a driver should ascertain whether it can be completed safely. Shelton v. Safeway Ins. Co. of Louisiana, 36,736 (La.App. 2 Cir. 1/29/03), 836 So.2d 1225, 1228; Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305. Once a plaintiff has established that the defendant was attempting to make a left turn when the accident occurred, the burden of proof then shifts to the defendant to prove that he or she was free from fault. Stevens v. Willis, 00-01171, 00- *631 01172 (La.App. 3 Cir. 1/31/01), 778 So.2d 1196.
In this case, the trial court found that the defendant was negligent in her execution of the left hand turn. The testimony at trial established that she was executing a left hand turn in heavy traffic. She admitted that she did not see the plaintiff prior to impact. We cannot say that the trial court was manifestly erroneous in finding that defendant was at fault for this accident.
The trial judge further found plaintiff contributorily negligent, and he assessed her with 10% fault. While the trial court did not specifically state whether he found that the second lane of travel started before or after the intersection with Monte Carlo, he did opine that, because of the traffic conditions, defendant should | shave been more careful. Harris moved over right prior to the intersection, in heavy traffic, instead of waiting to clear it before she moved into the lane. We cannot say that the trial court was manifestly erroneous in this case.
In her answer, plaintiff alleges the general damage award of the trial court was inadequate and should be increased. In reviewing damages, the standard is not manifest error, but abuse of discretion:
[T]he discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Miller [v. Clout], 03-0091 at p. 7, 857 So.2d [458] at 463 [ (La.2003) ], quoting Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
LaFleur v. Martin, supra at 30-31; Thibodeaux v. Stonebridge, L.L.C., 03-1256 (La.App. 5 Cir. 4/27/04), 873 So.2d 755, 766.
On the date of the accident, March 24, 2000, plaintiff went to Kenner Regional. X-rays of her spine, left shoulder, elbow, and left femur produced negative results. She was diagnosed with a soft tissue injury, prescribed medications and told to follow up with her family doctor.
Plaintiff was seen by Dr. Howard initially on March 28, 2000. He diagnosed acute cervical/lumbar strain, left shoulder strain and bilateral elbow contusions, and prescribed medications and physiotherapy. He treated her until August, when she was referred to an orthopedic surgeon. An MRI was conducted on June 19th, 2000. The results were normal of the lumbar spine. The cervical spine showed minimal annular bulging of disc material without evidence of disc herniation or spinal canal stenosis. The MRI of her left shoulder showed inflammation and/or 17degenerative changes with a small, degenerative subcor-tal cyst formation within the humerus.
Plaintiff first saw Dr. Meyer on August 8, 2000. He diagnosed impingement syndrome of the left shoulder with cervical and lumbar strain. He injected her shoulder, and prescribed exercises for her neck and lower back. Plaintiff returned on September 12th, 2000 complaining of left shoulder and back pain. Dr. Meyer’s examination revealed findings consistent with resolving cervical and lumbar strain with underlying disc disease, and improvement in impingement syndrome in shoulder. Plaintiff returned on December 19th, 2000 and Dr. Meyer noted resolving cervical and lumbar strain with associated de *632 generative disc disease. He also found rotator cuff tendinosis in the left shoulder.
In March of 2001, plaintiff fell down some stairs and hit her head. She went to Kenner Regional to rule out concussion. She stated that the fall did not aggravate her injuries from the accident.
On May 9, 2001, plaintiff was evaluated by Dr. Roger Smith, a neurologist. He obtained an MRI on May 14, 2001 that showed no evidence of degenerative disc disease of the thoracolumbar spine. He prescribed another course of physical therapy. He saw plaintiff on July 9th, 2001 and prescribed continuing therapy. On September 24, 2001 he noted that the MRI was normal, but plaintiff had developed sciatic pain over the last two to three months. He continued with prescriptions. An EMG conducted in October showed mild chronic neurogenic atrophy at L5S1 spine.
In January of 2002, plaintiff was involved in a second accident. She stated that the second accident aggravated her neck injury, but not her back injury, which has been her primary complaint.
| sAfter the second accident, plaintiff was seen by Dr. Stefan Pribil. He opined that the MRI showed subtle disc prominence of the cervical spine, and no definite lumbar spine abnormalities. There is no recommendation for surgery in the records presented to this Court.
At trial, plaintiff testified that her husband, who she met in 2002, is a therapist, and that she still gets treatments for her lower back at home. There was no evidence of the nature, duration and frequency of these treatments.
The trial court awarded $24,700.00 in general damages. The record shows that plaintiff was treated conservatively for her injuries from March 24, 2000 until September 24, 2001, a period of 20 months, and that she still continued to suffer with symptoms up to the date of trial. We find that, under the circumstances of this case, the trial court abused its discretion as the damages awarded in this ease were inadequate.
Because plaintiff stipulated that her damages were $50,000.00 or less, this Court is limited in the amount that it can award. We therefore increase the general damage award to $34,840.00, subject to the 10% reduction for plaintiff fault.
For the above discussed reasons, the judgment of the trial court is amended to increase the award of general damages to $34,840.00, and as amended, is affirmed. All costs are assessed to appellants.

AFFIRMED AS AMENDED.