573 So.2d 1304 (1991)
SUCCESSION OF HARVEY.
No. 22017-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1991.
*1305 William H. Baker, Jonesboro, for appellants.
Hal R. Henderson, Arcadia, for appellee.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Theron L. Harvey and J.P. Harvey, brothers of a deceased person, appeal a judgment dismissing their opposition and ordering a statutory will probated. For reasons hereinafter expressed, we affirm.

FACTS
Jimmy T. Harvey died at the age of 80 on June 9, 1989. Shortly thereafter, his surviving spouse and her daughter petitioned the court for probate of a statutory testament purportedly executed by the deceased on December 1, 1987. The dispositive provision stated:
I will and bequeath unto my wife, Ella Myrtle Harvey, all personal property, including all monies on deposit located in any bank, savings and loan association or other depository; any automobile owned by me at the time of my death; any household or personal effects; and any and all other movable property whatsoever.
The will also named Emily Watts Norriss, daughter of the surviving spouse, executrix. Below an "X" mark on the signature line of the testament, the following attestation clause appeared:
The foregoing will was read aloud in the presence of the testator and of each other, such reading having been followed on copies of the will by notary and witnesses not reading the will aloud, the said testator affixing his mark at the end of said will and declaring that he is not able to sign his name because of blindness, and declared by testator above named, in our presence to be his last will and testament, *1306 and in the presence of testator and each other we have hereunto subscribed our names on this 1st day of December, 1987.
Another "X" mark, and the signatures of a notary and three witnesses, concluded the one-page document.
In response to the petition for probate, the two brothers filed an opposition seeking to invalidate the will. They averred that, contrary to the declaration of the testament, the decedent possessed the ability to read and write and sign his name; that the purported will deviated from the form required by statute; that, in other proceedings antedating the instrument's execution, the surviving spouse had asserted her husband's unsoundness of mind; and that undue influence or fraud affected the document's preparation.
Trial was held on July 31, 1989. The evidence revealed that the elderly testator's health had progressively declined during the years preceding his demise. As with many older individuals, his eyesight had deteriorated; he described images as "a blur." A diabetic condition also affected his vision, and testimony adduced that he could not see to dial a telephone. Partially due to these limitations, his wife, stepdaughter, and step-granddaughter accompanied him to the office of Howard Wright, an attorney and notary, on the date of the will. There, after discussing his testamentary intentions with Wright, the testator executed the document in question.
In a written opinion, the trial judge concluded that testamentary capacity had been proved by "considerably more than a preponderance," and that the document had been properly executed. He further found no evidence of fraud, undue influence, or conspiracy. Additionally, the court decided the testator had been correctly treated as a blind person in the making of his will. Thus, the judgment ordered the testament probated. This appeal ensued.

DISCUSSION
LSA-R.S. 9:2443 sets forth the requirements for execution of a statutory testament by illiterates or those with impaired sight. On the date of the will at issue, that Section read as follows:
A. A statutory will may be executed under this Section by a person whose sight is impaired to the extent that he cannot read, or who does not know how to read and whether or not the person is able to sign.
B. The statutory will shall be prepared in writing and shall be dated and executed in the following manner:
(1) The will shall be read aloud by the notary in the presence of the testator and three competent witnesses, and the witnesses shall follow the reading on copies of the will.
(2) After the reading, the testator shall declare or signify to them that he heard the reading and that the instrument is his last will and shall sign his name at the end of the will and on each other separate page of the instrument. If the testator cannot sign his name, he must so declare or signify to the notary in the presence of the witnesses and declare or signify the cause that hinders him from signing, and shall then affix his mark in the places where his signature is required.
(3) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: `Read aloud by the notary in the presence of the testator and each other, such reading having been followed on copies of the will by the witnesses, signed at the end and on each other separate page, (or if not signed by the testator, the statement of his declaration or signification that he cannot sign his name and of the cause that hinders him from signing) and declared or signified by testator, in our presence, to be his last will and testament, and in the presence of testator and each other we have hereunto subscribed our names on this ___ day of _____, 19__.'
C. A competent witness for the purposes of this Section is a person who meets the qualifications of Civil Code *1307 Articles 1591 and 1592, and who knows how to sign his name and to read the will as written and is physically able to do both.
D. The statutory will authorized by this Section may not be executed in braille or other similar mode of expression.
Inasmuch as opposition was instituted before actual probate of the will, the proponents faced the burden of proving authenticity and compliance with the formal requirements of law. LSA-C.C.P. Art. 2903. Nevertheless, the testament is still presumed valid, and proof of nonobservance of formalities must be exceptionally compelling to rebut that presumption. Succession of Staggers, 254 So.2d 289 (La. App. 4th Cir.1971), writ not considered, 254 So.2d 617 (La.1971). See Succession of Kilpatrick, 422 So.2d 464 (La.App. 2d Cir. 1982), writ denied, 429 So.2d 126 (La.1983); Succession of Caprito v. Mayhew, 478 So.2d 243 (La.App. 3d Cir.1985), writ denied, 481 So.2d 1331 (La.1986); and Succession of Norton, 451 So.2d 1203 (La.App. 5th Cir.1984), all interpreting LSA-C.C.P. Art. 2932, which embodies burden of proof language indentical to Article 2903.
LSA-C.C.P. Art. 2887 governs the proof required in establishing authenticity. It states, in pertinent part:
A. A statutory will must be proved by the testimony of the notary and one of the subscribing witnesses or of two of these witnesses that it was signed by the testator. If only the notary or only one of these witnesses is living in the state and can be located his testimony that the testament was signed by the testator will be sufficient.
Opponents basically assert four issues on appeal. They first maintain that the testator's infirmity, termed by appellants as possible partial blindness, did not deprive him of the physical ability to sign his name in some fashion, and therefore the testament, only marked with an "X," should have been declared null and void. Second, it is contended that the evidence did not adequately identify the person who appeared at the lawyer's office as Jimmie T. Harvey. Third and fourth, it is asserted that an heir witnessed the testament, and that the evidence failed to establish the qualifications of the attesting witnesses.
Of course, as stated previously, the district court concluded that the requirements for a statutory testament had been met. On that issue, factual in nature, the trial judge stands in the better position to observe the demeanor of the witnesses and evaluate their credibility. Indeed, his findings are entitled to great weight and will not be disturbed unless clearly wrong. Succession of Kilpatrick, supra.

Physical Disability Impeding Signature
Consistent with statutory requirements, the testament at hand indicates blindness constituted the impediment to the decedent's signature. And, the evidence supports that declaration. The subscribing notary and two of the three attesting witnesses, specifically the notary's legal secretary and his receptionist, testified that the testator stated blindness obstructed his ability to read and write. In fact, according to them, his disability was outwardly perceivable. The surviving spouse and her daughter also confirmed that a lack of vision incapacitated the deceased, even to the extent that he could not see to dial a telephone. In fact, an opponent to the will, J.P. Harvey, likewise acknowledged his brother's poor eyesight.
The record also suggests that, some three months before executing the will, the testator had affixed his mark on a deed in favor of his two brothers. Hence, that past conduct, along with the testimony adduced at trial, substantiates the appropriateness of the inscription on the testament. Moreover, the trial court's conclusions on the issue are not clearly wrong.

Identity of Testator
As previously mentioned, one alleged deficiency centers on the supposed impersonation of Jimmie T. Harvey during the execution of the testament. Opponents argue that only the surviving spouse and her daughter, the executrix, identified the *1308 deceased as the person who executed the will. Nevertheless, the trial court found their testimony quite believable, and rejected any "conspiracy" notion. Clearly, the evidence supports that determination.

Heir as Witness
Another issue concerns the asserted witnessing of the testament by an heir. According to LSA-R.S. 9:2443, witnesses to a statutory will must possess the qualifications of LSA-C.C. Art. 1592, which states:
A. Neither can testaments be witnessed by those who are constituted heirs or named legatees, under whatsoever title it may be.

B. Notwithstanding the prohibition contained in Paragraph A of this Article, if a testament is witnessed by an heir or legatee, the testament shall be valid, except as to any legacy to that heir or legatee in the testament. This shall apply to all testaments, regardless of when made.
(Emphasis added.)
Based upon the above emphasized phrase, opponents contend that Beverly Norriss, an attesting witness to the testament, is an "heir" or "legatee" since she is a daughter of the executrix, who in turn is a daughter of the named legatee.
Opponents are mistaken in their contention. The cited phrase obviously refers to the three distinct types of legacies mentioned in LSA-C.C. Art. 1605, i.e., universal legacies, legacies under a universal title, and legacies under a particular title.
The will made no disposition whatsoever in favor of Beverly Norriss. Furthermore, she is not an heir of the deceased. Nor is she even an heir of her mother or grandmother, for no one can be the heir of a living person. Nemo est haeres viventis. See LSA-C.C. Art. 876, Comment (b); 10 L. Oppenheim, Louisiana Civil Law Treatise-Succession and Donations, § 12 (1973). Cf. LSA-C.C. Art. 934.
Thus, Article 1592 being inapplicable, the third complaint lacks merit.

Witness Capacity
Inadequacy of proof that the three witnesses, particularly Beverly Norriss, possessed no disqualifications, per LSA-C.C. Art. 1591, is asserted as yet another deficiency. That Article states:
The following persons are absolutely incapable of being witnesses to testaments:
1. Children who have not attained the age of sixteen years complete.
2. Persons who are insane.
3. Persons who are deaf. However, one who is deaf may be a witness to a testament authorized by R.S. 9:2442 and R.S. 9:2444.
4. Persons who are blind.
5. Persons whom the criminal laws declare incapable of exercising civil functions.
Testimony reflects that all of the witnesses were of sufficient age. As stated previously, two testified at the trial. The third, Beverly Norriss, had been residing in California for more than a year at the time of the trial. Save possibly the capacity to exercise "civil functions," the evidence circumstantially suggests the eligibility of all three individuals to serve in the capacity of a witness.
The legal issue presented is whether the proponents, faced with proving authenticity and formality compliance, should be required to produce evidence as to the attesting witnesses' competency to act, even though the petition of opposition did not allege their incapacity.
Of course, the probabilities of the situation are often a significant consideration in assigning the burden of proof. Consequently, the party who contends that the more unusual event has occurred will frequently be allocated the burden of persuasion. E. Cleary, McCormick on Evidence, § 337 (3d Ed.1984). Presumptions, effectively transferring the burden of producing evidence, arise for similar reasons. Id., § 343.
In the present case, the general presumption of testamentary validity necessarily favors the witnesses' qualifications until *1309 the contrary is established. Moreover, since opponents neither alleged lack of capacity by a witness, nor presented any evidence of disqualification, that presumption abides. Thus, with respect to LSA-C.C. Art. 1591, the witnesses are presumed and deemed qualified. The contention made lacks merit.

Reading of the Testament
Although not formally addressed in opponents' brief, the attestation clause reveals that the notary did not actually read the testament aloud. Instead, according to its disclosures, one of the witnesses so read the document while the testator, the notary, and the other two witnesses followed that reading on copies of the instrument. The notary testified that, on the day of execution, an allergy and asthma condition prevented him from reading the testament aloud.
Substantial compliance with the statutory formalities is all that is required to maintain validity. Succession of Porche, 288 So.2d 27 (La.1973); Succession of Morgan, 257 La. 380, 242 So.2d 551 (1970). In the instant case, the testator did, in the presence of the notary and three witnesses, indicate that he had heard the reading and that the instrument represented his last will. The evidence clearly establishes that the notary accomplished the intended purpose of the reading of the testament, viz., to ensure that the person executing the document knows its contents. Hence, no error occurred.

CONCLUSION
Accordingly, the record is devoid of any evidence of material deviations in the statutory formalities required in executing a testament pursuant to LSA-R.S. 9:2443. Thus, the judgment of the trial court, ordering the testament probated, is affirmed for the reasons discussed. Opponents are cast for costs.
AFFIRMED.