JjKOSTELKA, J.
The three adult children of Quitman Thomas Cooper, Jr. (“Mr. Cooper”) appeal the trial court’s grant of a motion for involuntary dismissal which served to dismiss the childrens’ claims to annul the probate of Mr. Cooper’s testament. For the following reasons, we affirm.
Facts
Mr. Cooper died on July 26, 2000 following a stroke in October, 1999 and months of illness. His adult children, Edwina Cooper Black (“Edwina”), Gary Cooper (“Gary”), and Patsy Cooper Lewis (“Patsy”) (collectively, “appellants”) sought to annul a notarial testament executed by their father on November 2, 1999, wherein he left virtually the entirety of his estate to his wife, Juanita Cooper (“Juanita”).
Mr. Cooper had previously been married for approximately forty years to the appellants’ mother until her death in 1981. After his wife’s death, Mr. Cooper began seeing Juanita. Although the appellants reportedly enjoyed a good relationship with their father, there was apparently some early tension over his relationship with Juanita; however, it seems that as time passed, the tension eased and the appellants came to accept Juanita.
In September, 1999, Mr. Cooper was hospitalized with pneumonia. During his hospitalization, he suffered a stroke and remained hospitalized until late October. Appellants allege that the effects of the stroke were significant and that their father was taking several medications. They farther claim that Mr. Cooper’s communication skills were particularly impacted by the stroke, alleging that he suffered from aphasia — a language disorder caused by damage to the language centers of the brain resulting from the stroke.
I ¡(When Mr. Cooper was discharged, Juanita cared for him in his home. On the evening of October 27, 1999, without the knowledge of the appellants, Mr. Cooper and Juanita were married by a justice of the peace at Mr. Cooper’s home.
A few days later, Gary, who lived out-of-town, returned to Monroe, Louisiana, where Mr. Cooper lived. Appellants claim that Gary became concerned about his father’s ability to handle his own finances when he allegedly noticed some unpaid medical bills. Years before, Mr. Cooper had opened a joint bank account with Gary, so Gary and Patsy went to the bank to inquire if Mr. Cooper was having financial problems. Instead, they discovered that their father had a checking account and money market accounts with combined balances of over $30,000. The appellants *1089 claim that at that time, Gary opened two new accounts in both his and his father’s names, transferring most of the money into these accounts.
That very day, Juanita presented herself at the same bank with her and Mr. Cooper’s marriage license, asking that her name be placed on all of Mr. Cooper’s accounts. The bank officer telephoned Patsy to inform her of the situation. Later, Gary and Patsy returned to the bank, and the bank officer informed them that she had instructed Juanita a power of attorney would be necessary to change the names on the accounts. At that point, Gary and Patsy transferred the funds to an account in their names only.
Subsequently, Robert Curry (“Mr. Curry”), a Monroe attorney, was contacted to prepare a testament for Mr. Cooper.[1] Mr. Curry prepared a ^notarial testament and on November 2, 1999 brought it to Mr. Cooper’s home with two employees from his firm to act as witnesses, and the testament was duly executed. In this testament, Mr. Cooper left everything to his wife, Juanita, save $1 to each of his children. Wendell L. Black, Jr. (“Black”), Mr. Cooper’s grandson (who was also married to Juanita’s daughter), was named executor.
In December, 1999, Mr. Cooper was admitted to the hospital. His condition worsened and he remained hospitalized until March, 2000. He was able to go home for a short time but soon was re-hospitalized until his death on July 26, 2000.
After Mr. Cooper’s death, appellants became aware that their father had executed the testament in favor of Juanita. In August, 2000, they filed a Petition for Notice and Opposition to Probate of Testament and learned that it had already been probated. ■ Subsequently, appellants filed a rule to show cause and this action proceeded to a three-day trial to annul the probate. At the close of appellants’ case, the appellees, Black and Juanita, moved for an involuntary dismissal,, which the trial court granted. This appeal ensued.
Discussion
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action on the ground that upon the facts and law, the plaintiff has shown no right to relief. La. C.C.P. art. 1672 B; Cupples v. Pruitt, 32,786 (La.App.2d Cir.03/01/00), 754 So.2d 328, writ denied, 2000-0945 (La.05/26/00), 762 So.2d 1108, citing Dampeer v. Dampeer, 96-0708 (La.05/03/96), 672 So.2d 176. The trial judge is required to evaluate the evidence and render a decision in accord with the applicable burden of proof: Cupples, supra; Silva v. Calk, 30,085 (La.App.2d Cir.12/10/97), 708 So.2d 418. Thus, a judgment of involuntary dismissal is subject to manifest error review. Cupples, supra; Silva, supra; Sallis v. City of Bossier City, 28,483 (La.App.2d Cir.09/25/96), 680 So.2d 1333, writ denied, 96-2599 (La.12/13/96), 692 So.2d 1063 and writ denied, 96-2592 (La.12/13/96), 692 So.2d 376.

Lack of Capacity

By their first assignment of error, the appellants submit that the trial court erred in its determination that Mr. Cooper had the capacity to execute the November, 1999 testament, arguing that as a result of his stroke, Mr. Cooper was unable to read the testament presented to him. The bur *1090 den of proving Mr. Cooper’s lack of testamentary capacity is a heavy one for the appellants.
All persons have capacity to give and receive donations inter vivos and mor-tis causa, except as expressly provided by law. La. C.C. art. 1470. There is a presumption in favor of testamentary capacity. Cupples, supra, citing Succession of Lyons, 452 So.2d 1161 (La.1984); Succession of Kilpatrick, 422 So.2d 464 (La.App. 2d Cir.1982), writ denied, 429 So.2d 126 (1983). Testamentary capacity means the donor must “be able to comprehend generally the nature and consequences of the disposition that he is making.” La. C.C. art. 1477; Succession of Lyons, supra; Succession of Dodson, 27,969 (La.App.2d Cir.02/28/96), 669 So.2d 642.
| sA party alleging lack of testamentary capacity must overcome the presumption of capacity by clear and convincing evidence. La. C.C. art. 1482. To prove a matter by “clear and convincing” evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Mack v. Evans, 35,364 (La.App.2d Cir.12/05/01), 804 So.2d 730, writ denied, 2002-0422 (La.04/19/02), 813 So.2d 1088; In re Succession of Poland, 34,291 (La.App.2d Cir.04/04/01), 784 So.2d 701, citing, Succession of Bilyeu, 28,701 (La.App.2d Cir.09/25/96), 681 So.2d 56, writ denied, 96-2868 (La.01/24/97), 686 So.2d 862.
Here, the appellants argue that their father, as a result of his stroke, was incapable of reading the testament prepared for him by Mr. Curry, and, thus, lacked the capacity to execute the testament in its given form. To support their claim that Mr. Cooper was mentally unable to read, the only expert witness offered by the appellants was Allison Drost, a speech therapist who had worked with Mr. Cooper while he was both in and out of the hospital. She stated that as a result of Mr. Cooper’s stroke, he suffered from aphasia, a disorder affecting the language centers of the brain. She explained that Mr. Cooper experienced both expressive aphasia, impeding his ability to express himself via speech and/or gestures, and mild auditory aphasia, impeding his ability to understand the spoken word. Ms. Drost acknowledged that the ability to understand the written word differed from the ability to understand the spoken word. She also stated that a person does not have to be able to speak in order to understand. Finally, Ms. Drost admitted that Mr. Cooper understood 90 percent of the time the words he |fiwas reading. There was no other medical testimony regarding the effects of the stroke on Mr. Cooper, and the only other witnesses bearing on Mr. Cooper’s alleged inability to read were the appellants.
On the other hand, Mr. Curry, the attorney who drafted the testament, as well as notarized it, stated that he felt “very comfortable” with Mr. Cooper’s capacity to execute the testament in the form it was presented to him.[2] Although Mr. Curry noted that Mr. Cooper had not instructed him personally as to the contents of the testament prior to its being drafted, he testified that he would not have notarized it had he felt uncomfortable with Mr. Cooper’s capacity. Mr. Curry also stated that at the time of execution, Mr. Cooper appeared to read the testament in his presence while Mr. Curry went over the pertinent provisions, specifically the bequests made. Significantly, Mr. Curry stated that upon concluding his review of the testament with Mr. Cooper, Mr. Cooper *1091 started to sign it but was stopped by Mr. Curry. Such action by Mr. Cooper indicates that he understood what Mr. Curry had explained, and that the explanation had concluded. Thus, by implication, it appears that Mr. Cooper had read the testament and understood its contents as well. Mr. Curry had to interrupt Mr. Cooper from executing the testament to ask him to state whether the document, as presented, was his last will and testament, to which Mr. Cooper answered yes. Then, Mr. Curry allowed Mr. Cooper to execute the testament, which Mr. Cooper did unassisted. In addition to Mr. Curry, the trial court also heard testimony from the two individuals employed by Mr. Curry’s law |7firm who had witnessed the execution of the testament, both of whom opined that Mr. Cooper appeared to understand fully his actions. Significantly, one of the witnesses to the testament had also been a witness to the power of attorney the day before and had entered into some' discourse with Mr. Cooper at that time.
After hearing the evidence presented by the appellants, the trial court upheld Mr. Cooper’s testament and rejected the appellants’ claim that their father lacked testamentary capacity. Appellants argue this was error. Resolution of conflicts in testimony and credibility determinations in succession proceedings are within the province of the trial court. Succession of Fletcher, 94-1426 (La.App. 3d Cir.04/05/95), 653 So.2d 119, writ denied, 95-1105 (La.06/16/95), 655 So.2d 338. Although the trial court, in its reasons for judgment, made no explicit statement as to the issue of Mr. Cooper’s ability or inability to read, the court noted that it was not satisfied that the appellants had proved their father was legally incapable of making his testament, specifically determining that the appellants had failed to carry their required burden of proof.- On this record, it does not appear that the. trial court was manifestly erroneous in its factual finding, and the dismissal of the appellants’ claim on this issue was proper.

Undue Influence

Having determined that the trial court correctly determined the appellants’ failure to prove Mr. Cooper’s incapacity, we can turn to the issue of whether his testament was the result of undue influence, as also |salleged by the appellants.[3] In their second assignment of error, the appellants argue that the trial court erred in its determination that the testament in favor of Juanita could not have been the product of undue influence because of her marriage to Mr. Cooper. Appellants urge that the trial court’s legal error interdicted its fact-finding process on their claim of undue influence by Juanita.
Prior to 1991, evidence of undue influence was limited in Louisiana. Subsequently, in 1991, the Louisiana Legislature enacted provisions in connection with the redefinition of Louisiana’s laws on forced heirship. Louisiana C.C. art. 1479 states:
A donation inter vivos or mortis causa shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor.
La. C.C. art. 1483 sets forth the applicable burden of proof for claims of undue influence, stating:
A person who challenges a donation be- ■ cause of fraud, duress, or undue influence, must prove it by clear and convincing evidence. However, if, at the time *1092 the donation was made or the testament executed, a relationship of confidence existed between the donor and the wrongdoer and the wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence.
Although Article 1483 does lessen the burden for those in a relationship of confidence with the donor to a “preponderance of the evidence” standard, the article does not relax the burden for those confidantes who are related by 13marriage (i.e., “affinity”). Thus, as Mr. Cooper and Juanita were married at the time his testament was executed, the appellants are required to prove undue influence by “clear and convincing evidence.” Such issues involve questions of fact, and the trial court’s determination will not be disturbed unless clearly wrong. Succession of Anderson, 26,947 (La.App.2d Cir.05/10/95), 656 So.2d 42, writ denied, 95-1789 (La.10/27/95), 662 So.2d 3; Succession of Hamiter, 519 So.2d 341 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1170 (La.1988).
The concept of undue influence in our case law has been inexact. As a subjective standard, it is difficult to define, and thus prove. Article 1479 states that undue influence requires a showing that the “volition” or free will of the donor was replaced by the will of someone else. “Mere advice, or persuasion, or kindness and assistance, should not constitute influence that would destroy the free agency of a donor and substitute someone else’s volition for his own.” See, Comment (b) to La. C.C. art. 1479.
The appellants point to the trial court’s oral reasons for judgment, urging that the trial court mistakenly relied upon and misinterpreted Succession of Reeves, 97-20 (La.App. 3d Cir.10/29/97), 704 So.2d 252, writ granted, 98-0581 (La.05/01/98), 805 So.2d 185.[4] Appellants argue that the trial court erroneously interpreted Reeves to stand for the proposition that a spouse cannot be guilty of undue influence, and such mistaken reliance led to the court’s erroneous determination that Juanita had not exercised undue influence on Mr. Cooper. Appellants maintain that the Imtrial court’s mistaken reliance on Reeves constituted legal error and interdicted its fact-finding process. However, our reading of the trial court’s reasons for judgment, as well as other statements of the court, do not indicate an erroneous interpretation of Reeves. Instead, the trial court noted that an opponent to a testament has a heavy burden to prove undue influence. Such a statement, in light of La. C.C. arts. 1479 and 1483, is correct, and the trial court properly assessed the evidence before it in determining that the appellants failed to meet the requisite burden of proof for an undue influence claim.
Specifically, appellants claim that Juanita exercised undue influence and manipulation over their father, resulting in his bequeathing the entirety of his estate to her. The appellants argue that because Juanita was with Mr. Cooper for much of the time he was hospitalized, she was able to convince him the appellants wanted to place him in a nursing home. They further claim Juanita had persuaded Mr. Cooper that his children had stolen his money when they transferred the funds to new accounts. Appellants maintain that Juanita purposefully leveled such accusations *1093 against them to Mr. Cooper, clearly influencing him to execute his testament in her favor.
At trial, the appellants had the burden to prove by clear and convincing evidence that Juanita exercised undue influence on Mr. Cooper to execute his testament in her favor, which they failed to do. Although appellants put forth allegations claiming to be evidence of Juanita’s undue influence over their father, particularly in connection with her repeated declarations that Gary and Patsy had stolen Mr. Cooper’s money, that evidence, at best, is circumstantial, if not mere assumption. The fact that In Juanita may have made accusatory statements to the appellants might show her state of mind but does not necessarily prove that she imposed her opinion on Mr. Cooper. On the other hand, we note that Mr. Cooper and Juanita were not newly acquainted. They had been in a relationship with one another for almost twenty years when they married in October, 1999. The testimony throughout the trial consistently showed that Mr. Cooper and Juanita loved one another, and that Juanita nursed Mr. Cooper during his extended illness. There is no evidence that Juanita exerted physical coercion or duress over Mr. Cooper. Further, from the evidence presented at trial, it is just as reasonable to suppose that Mr. Cooper simply made a decision to provide for Juanita, his companion and wife, when he saw his life nearing an end as opposed to the claims that he was unduly influenced to do so by her.
The trial court did not misapply the proper legal standards stated in the applicable statutory law or jurisprudence; moreover, considering the evidence presented at trial, the trial court’s finding of fact that Juanita did not unduly influence Mr. Cooper was not manifestly wrong. This assignment of error is without merit.
Conclusion
For the foregoing reasons, the judgment in favor of Wendell L. Black Jr., executor of the Succession of Quitman Thomas Cooper, Jr., and Juanita I. Cooper is hereby affirmed at the appellants’ costs.
AFFIRMED.

. Mr. Curry had also prepared a power of attorney for Mr. Cooper in favor of Juanita, which had been, executed the day prior to the testament.

. Mr. Curry testified that he held specialized board certification in estate planning since 1991 and that a substantial part of his legal practice was in wills and estates.

. The capacity of a donor must be assured before a claim of undue influence may be addressed. See, La. C.C. art. 1479, Comment (b).

. Reeves was dismissed by the parties prior to being considered by the Louisiana Supreme Court.