GAIDRY, J.
 

 |?A decedent’s widow appeals a judgment annulling his notarial testament and vacating a prior judgment placing her in possession of the decedent’s property. We affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 Ibry Joseph Theriot (the decedent), a resident of St. Mary Parish, died on February 9, 2007, at the age of 85. He was survived by Wanda Dean Romero Theriot, his second wife, and Ibry Glyn-Francis “Billy” Theriot (Billy Theriot), his son from his first marriage.
 

 On April 22, 2005, the decedent signed a notarial testament
 
 [1]
 
 in which he left all of his community and separate property to Mrs. Theriot. The testament was prepared and notarized by an attorney, and the attorney and two witnesses attested that the decedent had declared it to be his testament and signed it in their presence.
 

 On March 19, 2007, Mrs. Theriot filed a verified petition for the probate of the decedent’s testament, together with the testament, a certified copy of the death certificate, and an affidavit of death, heir-ship, and domicile. On the same date, the trial court issued an
 
 ex parte
 
 order, ordering the testament filed and executed pursuant to La. C.C.P. art. 2891. On April 25, 2007, Mrs. Theriot filed a verified petition for possession of the decedent’s property, with a detailed descriptive list of the property. A | ¿judgment sending her into pos
 
 *881
 
 session of the property was signed by the trial court the same date.
 
 [2]
 

 On June 6, 2007, Billy Theriot filed a petition to annul his father’s testament and to re-open the succession proceeding, naming Mrs. Theriot as defendant. He alleged that his father was illiterate and that his notarial testament was invalid, as it was not executed in compliance with La. C.C. art. 1579. Mrs. Theriot answered the petition, denying that the decedent was illiterate and that his testament was invalid. The matter was tried by summary proceeding on October 9, 2007. At the conclusion of the trial, the trial court ruled in favor of Billy Theriot and stated its oral reasons for its decision. Its judgment annulling the testament, re-opening the succession proceeding, and vacating the judgment of possession in favor of Mrs. Theriot was signed on October 18, 2007. On November 8, 2007, a motion for new trial was filed on behalf of “The Succession of Ibry Joseph Theriot,” as purported “defendant.” The trial court denied the motion
 
 ex parte
 
 on November 20, 2007. Mrs. Theriot appeals.
 
 [3]
 

 ASSIGNMENTS OF ERROR
 

 We summarize Mrs. Theriot’s assignments of error as follows:
 

 (1) The trial court committed manifest error in its factual finding that the decedent could not read and in annulling his testament on that basis.
 

 (2) The trial committed an error of law in applying the incorrect standard of proof on the issue of the decedent’s alleged illiteracy.
 

 (3)The trial erred in denying the motion for new trial.
 

 | ¿DISCUSSION
 

 Appealability of the Judgment at Issue
 

 Because the trial court’s judgment did not conclude the succession proceedings and place Billy Theriot in possession of his late father’s property, we consider it appropriate to examine the nature of the judgment at issue and the basis for our appellate jurisdiction before addressing the merits of the appeal. Appellate courts have the duty to examine subject matter jurisdiction
 
 sua aponte,
 
 even when the issue is not raised by the litigants.
 
 City of Baton Rouge v. Bernard,
 
 01-2468, p. 4 (La.App. 1st Cir.1/22/03), 840 So.2d 4, 6,
 
 writ denied,
 
 03-1005 (La.6/27/03), 847 So.2d 1278.
 

 Louisiana Code of Civil Procedure article 2931 provides:
 

 A probated testament may be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executor, if he has not been discharged. The action shall be tried as a summary proceeding.
 

 The action to annul the probated testament is a new suit. La. C.C.P. art. 2931, Official Revision Comments — 1960, (b). Thus, it is technically a separate action from the succession proceeding, its object being the annulment of the testament pro
 
 *882
 
 bated in the succession proceeding. A judgment annulling the testament therefore determines the merits of that separate action, brought in the succession proceeding, and accordingly constitutes a final judgment. See La. C.C.P. art. 1841.
 

 Generally, appeals from orders or judgments rendered in succession proceedings shall be governed by the rules applicable to appeals in ordinary proceedings. La. C.C.P. art. 2974. Additionally, the rules governing ordinary proceedings are generally applicable to summary proceedings. La. C.C.P. art. 2596. The judgment at issue did not place Billy Theriot in possession of his father’s property, but such relief would technically be |ficonsidered part of the principal succession proceeding, rather than the action to annul. Because the judgment disposed of all of the issues in controversy presented within the context of the action to annul, it is clearly a final appealable judgment, rather than a partial final judgment under La. C.C.P. art. 1915(B).
 
 See Succession of Roth,
 
 230 La. 33, 36-7, 87 So.2d 719, 720 (La.1956).
 

 We conclude that the merits of this appeal are properly before us, and accordingly maintain the appeal.
 

 Burden of Proof and Standard of Review
 

 In an action to annul a notarial testament, the plaintiff always has the burden of proving the invalidity of the testament. La. C.C.P. art. 2932(B). Similarly, the burden of proving lack of testamentary capacity is upon the party alleging it
 
 Succession of Lyons,
 
 452 So.2d 1161, 1164 (La.1984). A party alleging lack of testamentary capacity must overcome the presumption of capacity by clear and convincing evidence.
 
 Id.
 
 at 1165-66. In the second assignment of error, Mrs. Theriot contends that the trial court committed legal error in failing to apply the standard of proof beyond a reasonable doubt, citing jurisprudence of the courts of appeal prior to
 
 Succession of Lyons. Succession of Lyons
 
 expressly overruled that prior jurisprudence. The second assignment of error has no merit.
 

 A testator’s ability to read is an element of testamentary capacity for purposes of execution of a notarial testament under La. C.C. art. 1577, and is a question of fact.
 
 Succession of Lawler,
 
 42,940, p. 4 (La.App. 2nd Cir.3/26/08), 980 So.2d 214, 216,
 
 unit denied,
 
 08-1117 (La, 9/19/08), 992 So.2d 939. The manifest error standard of appellate review applies to all factual findings, including challenges relating to the sufficiency of the evidence | (¡under the applicable standard of proof.
 
 See Hall v. Folger Coffee Co.,
 
 03-1734, pp. 9-10 (La.4/14/04), 874 So.2d 90, 98-9.
 

 Validity of the Testament
 

 A notarial testament is one that is executed in accordance with the formalities of La. C.C. arts. 1577 through 1580.1. La. C.C. art. 1576. If the testator knows how to sign his name and to read and is physically able to do both, he may execute a notarial testament in accordance with La. C.C. art. 1577. If the testator does not know how to read, whether or not he is able to sign his name, he must execute a notarial testament in compliance with the requirements of La. C.C. art. 1579, which provides:
 

 When a testator does not know how to read, or is physically impaired to the extent that he cannot read, whether or not he is able to sign his name, the procedure for execution of a notarial testament is as follows:
 

 (1)
 
 The written testament must be read aloud in the presence of the testator, the notary, and two competent witnesses. The witnesses, and the notary if he is not the person who reads the
 
 
 *883
 

 testament aloud, must follow the reading on copies of the testament. After the reading, the testator must declare or signify to them that he heard the reading, and that the instrument is his testament If he knows how, and is able to do so, the testator must sign his name at the end of the testament and on each other separate page of the instrument.
 

 (2)
 
 In the presence of the testator and each other, the notary and witnesses must sign the following declaration, or one substantially similar: “This testament has been read aloud in our presence and in the presence of the testator, such reading having been followed on copies of the testament by the witnesses! and the notary if he is not the person who reads it aloud,] and in our presence the testator declared or signified that he heard the reading, and that the instrument is his testament, and that he signed his name at the end of the testament and on each other separate page; and in the presence of the testator and each other, we have subscribed our names this
 
 day_of_,
 

 (3) If the testator does not know how to sign his name or is unable to sign because of a physical infirmity, he must so declare or signify and then affix his mark, or cause it to be affixed, where his signature would otherwise be required; and if he is unable to affix his mark he may direct another person to |7assist him in affixing a mark or to sign his name in his place. The other person may be one of the witnesses or the notary. In this instance, the required declaration must be modified to recite in addition that the testator declared or signified that he did not know how to sign his name or was unable to do so because of a physical infirmity; and that he affixed, or caused to be affixed, his mark or name at the end of the testament and on each other separate page.
 

 (4)A person who may execute a testament authorized by either Article 1577 or 1578 may also execute a testament authorized by this Article.
 

 (Emphasis supplied.)
 

 It is undisputed that the notarial testament executed by the decedent did not comply with the requirements of La. C.C. art. 1579, in that it was not read aloud to the decedent and did not contain the declaration or attestation clause required by La. C.C. art. 1579(2). Thus, the determination of the testament’s validity rested upon the evidentiary assessment of the decedent’s literacy.
 

 Louisiana Civil Code article 1577 does not require that the testator actually read a notarial testament at the time of its execution. La. C.C. art. 1577, Revision Comments-1997, (f). However, the testator “must have the intellectual ability to read the will in the manner in which it is written.” La. C.C. art. 1577, Revision Comments — 1997, (e). Billy Theriot, a retired university professor with a doctorate degree in comparative literature, presented his own testimony and that of four other witnesses, including two nieces, a nephew, and a longtime neighbor of the decedent, on the issue of the decedent’s literacy. The detailed testimony of those witnesses was to the effect that although the decedent could read a few simple words, count numbers, and sign his name, he needed the assistance of others to read and interpret his mail, the newspaper, investment documents, and medication instructions, and to write out checks that he would sign. Mrs. Theriot and | ¡¡three other witnesses, including a neighbor who was himself unfortunately illiterate, presented testimony that Mr. Theriot had a third-grade education, served in the U.S. Army during World War II, was capable of read
 
 *884
 
 ing the newspaper aloud, and appeared to understand financial statements relating to his investments.
 

 Significantly, none of the witnesses were able to produce a single document actually written by the decedent. While this circumstance is not conclusive proof that the decedent could not read, it does constitute strong and convincing indirect evidence of the decedent’s functional illiteracy. The witnesses testifying on behalf of Billy Theriot indisputably were acquainted with the decedent for much longer than the opposing witnesses. Additionally, the trial transcript reveals that the trial court took an active role in questioning Billy Theriot on relevant points of his testimony.
 

 When factual findings are based upon determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). As there are two permissible views of the evidence related to the issue of the decedent’s literacy and testamentary capacity, requiring an assessment of the credibility of the witnesses and the weighing of the evidence, the trial court’s determination is entitled to deference and cannot be considered manifestly erroneous.
 
 See Stoburt v. State through Dep't of Transp. & Dev.,
 
 617 So.2d 880,
 
 883
 
 (La. 1993). The underlying purpose of La. C.C. art. 1579 corroborates the importance of the trial court’s assessment of the credibility of the witnesses and weighing of the evidence. As recognized in the official Revision Comments, “it may be difficult to determine the testator’s ... literacy level with reasonable accuracy, much less with certainty,” La. C.C. art. 1579, Revision Comments — 1997, (c). [ (¡For that reason, to avoid any problem whenever doubt exists whether a testator knows how to read because his ability to do so is not definitive, La. C.C. art. 1579(4) permits even a fully competent testator to execute a testament under the article.
 
 Id
 

 The evidence in the record supports the trial court’s finding that Billy Theriot proved the decedent’s functional illiteracy and lack of testamentary capacity by clear and convincing evidence. Mrs. Theriot’s assignment of error on this central issue has no merit.
 

 New Trial
 

 Mrs. Theriot contends that the trial court erred in denying the motion for new trial. Although the motion was nominally filed on behalf of the “succession,” rather than Mrs. Theriot, we will assume that such designation was an inadvertent error.
 

 The standard of review of a judgment on a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion.
 
 Magee v. Pittman,
 
 98-1164, p. 19 (La.App. 1st Cir.5/12/00), 761 So.2d 731, 746,
 
 writ denied,
 
 00-1694 (La.9/22/00), 768 So.2d 31. Mrs. Theriot initially contends that the trial court’s judgment on the merits was clearly contrary to the law and the evidence, and therefore a new trial should have been granted on that peremptory ground, pursuant to La. C.C.P. art, 1972(1). For the reasons we previously set forth, we must reject this contention. The evidence in the record supports the trial court’s decision; thus, it did not abuse its discretion in denying Mrs. Theriot’s motion on that basis.
 

 Mrs. Theriot next contends that a new trial should have been granted in order to allow the presentation of testimony from the attorney who prepared the testament as to his method of assessment of the decedent’s |inliteracy prior to its preparation and execution. Her argument in this respect implicitly invokes the peremptory ground of new discovery of evidence under La. C.C.P. art.l972(2) and the
 
 *885
 
 discretionary grounds of La. C.C.P. art. 1973. As to the first ground, we observe that the attorney who prepared the testament also served as Mrs. Theriot’s trial counsel. As the testimony and evidence on that point was obviously available before trial, we cannot conclude that the trial court abused its discretion in denying the motion for new trial on that basis. Mrs. Theriot also urges that the motion should have been granted due to her trial counsel’s suffering a stroke, which may have impaired his ability to try the matter. While we of course sympathize with our colleague’s health problems, our review of the record and trial transcript does not reveal any objective evidence of pronounced impairment that might have resulted in injustice. Accordingly, we cannot discern any abuse of discretion by the trial court in denying the motion on that discretionary ground.
 

 The judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, Wanda Dean Romero Theriot.
 

 AFFIRMED.
 

 [1]
 

 . Although described in Mrs. Theriot’s succession pleadings as a "statutory” testament, the testament at issue was prepared after the effective date (July 1, 1999) of La. C.C. arts. 1574 to 1580.1. The requirements of the present notarial testament are essentially the same as those of the prior statutory testament under former La. R.S. 9:2442-2444.
 

 [2]
 

 . Simply for the sake of accuracy, we note that the trial judge who signed the order of filing of the testament and the judgment of possession was not the same trial judge who heard the action to annul the testament and signed the judgment at issue in this appeal.
 

 [3]
 

 . On November 9, 2007, Billy Theriot filed a petition for possession of the decedent’s property, with supporting proof, and on November 13, 2007, the trial court signed a judgment of possession, sending him into possession of the decedent's property and ordering Mrs. Theri-ot to restore the net worth of the succession based upon the detailed descriptive list filed on April 24, 2007.