Judgment rendered November 20, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,138-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF
JAMES CONWAY LINER, III

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2018-3832

Honorable Alvin R. Sharp, Judge

* * * * *

J. GARLAND SMITH & ASSOCIATES        Counsel for Appellants,
By:  James G. Smith                          Jeffrey Hanks Liner and
     Sarah M. Smith                          Laura D. Liner Centola

MARTZELL, BICKFORD & CENTOLA, A.P.C.
By:  Scott R. Bickford
     Lawrence J. Centola, III
     Jason Z. Landry
     Jeremy J. Landry

JOHN C. LAIRD, APLC                   Counsel for
By:  John C. Laird                         Appellee/Intervenor,
                                           James Conway Liner, IV

* * * * *

Before WILLIAMS, COX, and STEPHENS, JJ.

**WILLIAMS, C.J.**

The appellants, Jeffrey Liner ("Jeff") and Laura Liner Centola ("Laura"), are two of the three children of the testator, James Conway Liner, III ("Mr. Liner" or "the testator"), and the appellee is their brother, James Conway Liner, IV ("Conway"). The appellants have appealed a January 29, 2019, order confirming the appellee's appointment as provisional administrator of the testator's succession and a March 25, 2019, judgment declaring the testator's 2015 will null based on the trial court's determination that the attestation clause of the will was invalid. For the reasons set forth below, we affirm the trial court's confirmation of the appellee's appointment as provisional administrator, but reverse the March 25, 2019, judgment declaring the will null and remand the matter to the trial court for further proceedings in accordance with this opinion.

## FACTS

Mr. Liner executed a will on June 11, 2013 ("the 2013 will"), in which he essentially divided his estate equally among his three children, Conway, Jeff, and Laura. On June 3, 2015, Mr. Liner executed a new will ("the 2015 will"), in which he revoked all prior wills and divided the estate equally between Jeff and Laura. Mr. Liner died on October 9, 2018. Shortly thereafter, his attorney, Anthony Bruscato, met with the three Liner children and read the 2015 will. Upon learning that he had been excluded from his father's estate, Conway announced his intention to contest the 2015 will.

On November 27, 2018, Jeff and Laura filed a "Petition to Probate Notarial Will and for Letters of Testamentary." Attached thereto were copies of both wills. In their petition, Jeff and Laura sought probate of the 2015 will and the issuance of letters of testamentary to allow Jeff to act as

the independent executor, as he had been named by the testator to serve in that capacity in both wills.

On that same date, Conway filed an "Intervention in Probate"[1] in which he sought, *inter alia*, to have the 2015 will declared null and void, alleging that its attestation clause was invalid, and that Mr. Liner lacked the requisite capacity to execute a testament on June 3, 2015. Conway also made numerous specific factual allegations in support of a claim that his siblings "exerted undue influence and duress on the decedent to cause the 2015 Will to be an absolute nullity."[2] Conway further requested, *inter alia*, appointment as provisional administrator of the succession "upon his qualification as required by law."

The trial court signed an order appointing Conway provisional administrator on December 6, 2018. Thereafter, Jeff and Laura filed a motion and obtained an *ex parte* order staying Conway's appointment pending a hearing on January 22, 2019. On January 9, 2019, Conway filed a motion which sought, *inter alia*, that the court set the amount of security and method of inventory to be taken as required by law for Conway to complete his qualification as provisional administrator. He also filed a motion to disqualify counsel for his siblings, alleging that since Attorney Bruscato was the notary who signed the 2015 will, his testimony would be required in this matter. These matters were to be taken up at the January 22, 2019, hearing.[3]

---

[1] Initially filed as a "Petition in Probate," Conway's filing was re-captioned since Jeff and Laura's petition had already been filed.

[2] Jeff and Laura have filed a defamation action against Conway; it is separate from the instant succession proceeding.

[3] New counsel filed a motion to enroll, which was granted by the trial court on February 4, 2019, and Attorney Bruscato's motion to withdraw was granted by the trial court on February 6, 2019.

2

After the January 22, 2019 hearing, the trial court entered an order, confirming Conway's appointment as provisional administrator, and letters of provisional administration were issued on February 22, 2019. Thereafter, on March 25, 2019, the trial court rendered a judgment declaring the 2015 will null. The trial court designated this judgment as a final judgment in accordance with La. C.C.P. art. 1915(B). The appellants, Jeff Liner and Laura Liner Centola, have appealed both adverse rulings.

## DISCUSSION

### *Validity of the Attestation Clause in the 2015 Will*

In their first assignment of error, the appellants assert that the trial court erred in nullifying the 2015 will based upon its finding that the attestation clause therein was invalid. According to the appellants, the attestation clause in the 2015 will evidences its substantial compliance with the requirements of La. C.C. art. 1579(2).

The appellants also urge error in the trial court's conclusion, in its written reasons in support of its March 25, 2019, judgment, that the deviations from the attestation clause requirements, whether minor or not, "when viewed in the face of allegations of 'fraud'—cause the 2015 testament in question to be rendered invalid. . . ."

The appellee, on the other hand, urges this Court to affirm the trial court's judgment declaring the 2015 will to be null for failure to comply with the requirements of La. C.C. art. 1579, particularly in light of the alleged acts of undue influence and fraud on the part of the appellants raised

by the appellee in his intervention and amended and supplemental intervention.[4]

The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null. La. C.C. art. 1573; *Succession of Hanna*, 52,664 (La. App. 2 Cir. 6/26/19), 277 So. 3d 438; *Succession of Watson*, 52,199 (La. App. 2 Cir. 8/15/18), 253 So. 3d 867. There is a presumption in favor of the validity of testaments in general, and proof of the nonobservance of formalities must be exceptionally compelling to rebut that presumption. *Successions of Toney*, 16-1534 (La. 5/3/17), 226 So. 3d 397; *In re Succession of Holbrook*, 13-1181 (La. 1/28/14), 144 So. 3d 845; *Succession of Pesnell*, 52,740 (La. App. 2 Cir. 6/26/19), 277 So. 3d 842, *writ denied*, 19-1194 (La. 10/09/19), ___ So. 3d ___; *Succession of Hanna, supra*; *Succession of Dawson*, 51,005 (La. App. 2 Cir. 11/16/16), 210 So. 3d 421.

As noted by this Court in *Succession of Watson,* 253 So. 3d at 869, *citing Succesion of Roussel*, 373 So. 2d 155, 158 (La. 1979), the purpose of prescribing formalities for the execution of wills is to guard against mistake, imposition, undue influence, fraud or deception, to afford a means of determining the will's authenticity and to prevent substitution of some other writing in its place. Courts need not strictly adhere to the formal requirements of the notarial will to the extent of elevating form over function. *In re Succession of Holbrook*, *supra*; *Succession of Guezuraga*, 512 So. 2d 366 (La. 1987).

---

[4] The record shows that the first allegations of fraud were not asserted until the amended and supplemental intervention petition was filed by the appellee on March 28, 2019, which was *after* the trial court's judgment declaring the nullity of the 2015 will. Prior to that, in addition to his claim that the 2015 will's attestation clause was invalid, the appellee had raised only claims of undue influence and duress.

4

When a testator does not know how to or is unable to read, he cannot assure for himself that the document accurately reflects his desires. *Succession of Malone*, 509 So. 2d 659, 662 (La. App. 3 Cir. 1987). The requirements of La. R.S. 9:2443 (current article La. C.C. art. 1579)[5] provide a procedure which, if followed, gives the illiterate or sight-impaired testator reasonable assurance that his desires are in fact reflected in the document he is declaring to be his last will. *Id.*

La. C.C. art. 1579 is the provision setting forth the procedure for the execution of a notarial testament for a testator unable to read. As noted by the Fifth Circuit in *In re Succession of Graham,* 01-676 (La. App. 5 Cir. 11/27/01), 803 So. 2d 195, 198, a person physically impaired to the extent that he cannot read can still execute a notarial will, but only in accordance with the requisite formalities. Additional requirements include that the written testament be read aloud in front of the parties (not necessarily by the notary), that the reading was followed on copies of the testament by the witnesses (and the notary if he is not the person who reads the testament aloud), and that in their presence the testator declared that he heard it and that it is his will, and that he signed his name at the end of the testament and on each other separate page of the instrument. La. C.C. art. 1579(1).

Regarding the attestation clause to be signed by the notary and the witnesses, La. C.C. art. 1579(2) requires that, in the presence of the testator and each other, the notary and witnesses must sign the following declaration *or one substantially similar*:

---

[5] *In re Succession of Theriot*, 08-1233 (La. App. 1 Cir. 12/23/08), 4 So. 3d 878, 880 fn. 1, the requirements of a notarial testament executed under La. C.C. arts. 1574-1580.1 are essentially the same as those of the prior statutory testament under La. R.S. 9:2442-2444. *See also,* Kathryn Venturatos Lorio & Monica Wallace, 10 La. Civ. L. Treatise, *Successions and Donations*, §12.4 (2d ed.).

> This testament has been read aloud in our presence and in the presence of the testator, such reading having been followed on copies of the testament by the witnesses [, and the notary if he is not the person who reads it aloud,] and in our presence the testator declared or signified that he heard the reading, and that the instrument is his testament, and that he signed his name at the end of the testament and on each other separate page; and in the presence of the testator and each other, we have subscribed our names this ___ day of _____, _____."

The attestation clause in the 2015 will in question reads as follows:

> The foregoing instrument, consisting of eight (8) pages, and read aloud in the presence of the Testator and of each other, such reading having been followed on copies of the Will by Notary and witnesses, and the Testator declared that he had heard the reading of the Will by the Notary, and the Will was signed and declared by JAMES CONWAY LINER, III, Testator and above named, in our presence to be his Last Will and Testament, and in the presence of the Testator and each other we have hereunto subscribed our names on this 3rd day of June, 2015.

Following the attestation clause are the signatures not only of the two witnesses and the notary, but of the testator himself. Furthermore, the testator signed the bottom of each page of the testament.

There are only two aspects of this attestation clause that could arguably be considered non-compliant with the requirements of La. C.C. art. 1579. The first is the inclusion of the following: "such reading having been followed on copies of the Will by Notary and witnesses, and the Testator declared that he had heard the reading of the Will by the Notary. . . ."

In *Succession of Rogers*, 494 So. 2d 546 (La. App. 1 Cir. 1986), *writ denied*, 495 So. 2d 290 (La. 1986), a legatee under a prior will filed a petition to annul a 1982 statutory will executed pursuant to La. R.S. 9:2443, the predecessor to La. C.C. art. 1579. According to the legatee, the attestation clause in the 1982 will failed to indicate that the notary read the

will aloud, and the trial court erred in finding the clause to be in substantial compliance with La. R.S. 9:2443. The First Circuit observed:

> The attestation clause in the instant case . . . states the will was read aloud, but is somewhat ambiguous about who did the reading. To determine if this ambiguity is fatal, we must examine the statutory procedure for making this type of will and the reasons for such. A person who is sight impaired to the extent that he cannot read must rely on his other senses to communicate. ***To accomplish communication, the statute requires that the proposed will be read aloud to the testator. The three witnesses are required to follow the reading of the will on copies. This is to assure that the correct document is read to the sight-impaired person. The testator then must orally declare to the notary and the three witnesses that he heard the reading and that the document read was his last will and testament. The testator then signs the will. This completes the required communications. When viewed in this posture, it is apparent that the reading of the will aloud is very important. However, who reads the will aloud is not so important because the witnesses verify that the correct document was read and the testator advises the notary and the witnesses that what was read to him correctly represents his last will and testament.*** The testator then signs what was read to him in the presence of the notary and the three witnesses. Thus, the ambiguity of the attestation clause on *who* did the reading does not cast doubt on the integrity of the testament, and the clause is in substantial compliance with La. R.S. 9:2443(B)(3). (emphasis added).

*Succession of Rogers*, 494 So. 2d at 548-49. *See also, Succession of Harvey*, 573 So. 2d 1304 (La. App. 2 Cir. 1991).

While the appellee has argued that the notary could not have both "followed" on a copy of the will ***and*** "read" it aloud, we find this extraneous language, i.e., inclusion of the notary as having "followed" the reading on a copy along with the witnesses, to be insignificant and minor, considering that the inclusion of such language does not cast doubt on the integrity of the testament or prevent the clause from being in substantial compliance with La. C.C. art. 1579. Clearly, as the person reading the testament to the testator and witnesses, the notary is literally following the text of the

7

document, albeit out loud, while fulfilling the purpose of La. C.C. art. 1579, which is that the sight-impaired testator be assured that the document that was read to him and that he is signing correctly represents his last will and testament. *Succession of Harvey, supra; Succession of Rogers, supra.*

The second deviation we see is that the attestation clause does not explicitly state that the testator signed "at the end and on each other separate page." However, as held by this Court in *Succession of Dawson, supra* at 425, an attestation clause is not defective because there is no declaration that the testator signed the will at its end when the will itself "is clearly signed by the testator at the end and on each separate page[.]" Likewise, this Court in *Succession of Pesnell, supra* at 846-47, found that an attestation clause of a notarial will executed under La. C.C. art. 1577 that omitted the language "and on each other separate page" was not a material deviation where the testator's signature appeared on each page and the notary and witnesses attested to the testator signing at the end of the document.

We reiterate the *Pesnell* court's suggestion that it is the best practice to use the sample attestation clauses provided in La. C.C. arts. 1577-1580.1, also noting, however, the legislature has not mandated that this exact language be used. Articles 1577-1580.1 require only that the mandated attestation clause be "substantially similar" to the sample declaration provided therein. *See, Successions of Toney, supra; Succession of Pesnell, supra; Succession of Dawson, supra; Succession of Harvey, supra.*

Under the facts and circumstances of this case, although the attestation clause does not contain the phrase "at the end and on each other separate page," we find that the attestation clause meets all other requirements for the execution of a notarial testament under La. C.C. art.

8

1579. Thus, the attestation clause does not fail simply because the above-stated phrase is not included, where the testator's signature actually appears on the bottom of each of the eight pages of the testament, and where the notary and witnesses attested to the testator signing the testament in their presence.

Having found that the attestation clause in the 2015 will substantially complies with the requirements of La. C.C. article 1579, we reverse the trial court's judgment declaring the 2015 will null. The outstanding issues regarding the validity of the 2015 will, including the capacity of the testator and whether the 2015 will was the result of undue influence, fraud, or duress, will be addressed by the parties in a trial on the merits. The appellee, as the challenging party, will have the burden of proof by clear and convincing evidence.[6] *See*, La. C.C. arts. 1479, 1482, 1483; *In re Succession of Pardue*, 40,177 (La. App. 2 Cir. 11/8/05), 915 So. 2d 415; *In re Succession of Cooper*, 36,490 (La. App. 2 Cir. 10/23/02), 830 So. 2d 1087; *Cupples v. Pruitt*, 32,786 (La. App. 2 Cir. 3/1/00), 754 So. 2d 328, *writ denied*, 00-0945 (La. 5/26/00), 762 So. 2d 1108.

### *Appointment of Conway as Provisional Administrator*

In their second assignment of error, the appellants contend the trial court abused its discretion by appointing Conway the provisional administrator. The appellants further argue that, since the testator named Jeff to serve as the independent executor of the estate in both wills, by appointing Conway to serve as provisional administrator, the trial court has failed to comply with the wishes of the testator.

---

[6] As was done by the trial court in *Succession of Pesnell, supra*, the trial court in this case decided to first address the validity (or lack thereof) of the attestation clause in the will alleged by the appellee to be null, tacitly reserving the other claims asserted by the appellee (and defenses thereto by the appellants).

9

The appellee urges that the trial court did not err in appointing him as provisional administrator, noting that he was the only interested party who applied to serve in this position. Additionally, the appellee points out that the appellants neither properly opposed his application nor sought appointment as provisional administrator themselves.

La. C. C. P. art. 3111 provides:

The court may appoint a provisional administrator of a succession, pending the appointment of an administrator or the confirmation of an executor, when it deems such appointment necessary to preserve, safeguard, and operate the property of the succession. On the application of an interested party, or on its own motion, when such an appointment is deemed necessary, the court may appoint a qualified person as provisional administrator forthwith.

La. C. C. P. art. 3112 provides:

A provisional administrator shall furnish security and take the oath of office required by Articles 3152 and 3158, respectively. He shall continue in office until an administrator or executor has been qualified, or until the heirs or legatees have been sent into possession.

Except as otherwise provided by law, a provisional administrator has all of the authority and rights of an administrator, and is subject to the same duties and obligations, in the discharge of his functions of preserving, safeguarding, and operating the property and business of the succession.

Official Revision Comment (b) to article 3112 provides that the tenure of the provisional administrator may be further limited by his removal by the court, on any of the grounds assigned in La. C. C. P. art. 3182. These grounds include disqualification, incapability of discharging the duties of office, mismanagement of the estate, or failure to perform any duty imposed by law or court order. *Succession of Dean*, 17-0155 (La. App. 1 Cir. 3/29/18), 247 So. 3d 746, *writ denied*, 18-00679 (La. 9/14/18), 252 So. 3d 479; *In re Succession of Cheney*, 13-1455 (La. App. 3 Cir. 5/7/14), 139 So.

3d 663. A trial court is authorized to remove a representative only after such a showing is made. *Succession of Dean, supra*; *In re Succession of LeBouef,* 13-0209 (La. App. 1 Cir. 9/9/14), 153 So. 3d 527.

At the January 22, 2019, hearing, counsel for the appellants urged the following reasons for vacating Conway's appointment as provisional administrator: (1) the appellee's appointment as provisional administrator does not protect the appellants' interest, as reflected by the "bitter and hostile allegations" the appellee made against them in his petition of intervention; (2) there is no need for the appointment of an administrator at this time; (3) however, if there is such a need, the parties should have a pretrial conference, engage in discovery and give everyone a fair opportunity to be heard. On the other hand, the appellee noted that a provisional administrator was needed to collect, preserve, and protect the assets of the testator's succession, estimated to have a value of three million dollars.

As noted by the appellee, no one else has applied to be appointed provisional administrator. Since the appellee was the only one who sought the appointment, the trial court properly designated him as provisional administrator. In denying the motion to vacate the appointment of the appellee as provisional administrator, the trial court succinctly noted, "We [are] going to have somebody in charge. That just makes sense." The record supports the trial court's ruling, inasmuch as the appellants neither applied for the position nor established a valid basis for the appellee's removal as provisional administrator.

## CONCLUSION

For the reasons set forth above, the trial court's confirmation of James Conway Liner, IV, as provisional administrator is affirmed. The trial court's

11

March 25, 2019, judgment declaring the 2015 will of the testator, James Conway Liner, III, null is reversed. This matter is remanded for further proceedings. Costs of this appeal are to be divided equally between the appellants, Jeffrey Hanks Liner and Laura Liner Centola, and the appellee, James Conway Liner, IV.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**